**JIE LIN, Petitioner,**

v.

**John ASHCROFT, Attorney General, Respondent.**

No. 02–70662.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 4, 2003.

Filed Jan. 26, 2004.

Amended Aug. 4, 2004.

Amos E. Hartston, Melissa K. Pifko and Adrian F. Davis, Latham & Watkins, LLP, Los Angeles, CA, for the petitioner.

Daniel E. Goldman and Christine A. Bither, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for the respondent.

Before: B. FLETCHER, KOZINSKI, and TROTT, Circuit Judges.

### ORDER

The panel, with the following amendments, has voted to deny the petition for panel rehearing. The opinion published at 356 F.3d 1027 (9th Cir.2004) is amended as follows:

1. Op. at 1035, lines 5–12 of Section III.A.2: Delete

 We have held that such a due process challenge requires two showings.

First, the petitioner must allege facts to allow the court "to infer that competent counsel would have acted otherwise." *Mohsseni Behbahani v. INS*, 796 F.2d 249, 251 (9th Cir.1986). Second, "[d]ue process challenges to deportation proceedings require a showing of prejudice to succeed." *Rodriguez–Lariz v. INS*, 282 F.3d at 1226.

and replace with

We have also held that "[d]ue process challenges to deportation proceedings require a showing of prejudice to succeed." *Rodriguez–Lariz*, 282 F.3d at 1226.

2. Op. at 1035 n. 6: Delete footnote in its entirety.

3. Op. at 1035, line 2 of Section III.B: Delete "fell outside the range of professional competence." and replace with "constituted ineffective assistance of counsel.".

4. Op. at 1036, last two lines of Section III.B.1: Delete "we do not base our finding of incompetence entirely on this claim." and replace with "we do not base our finding of ineffectiveness entirely on this claim.".

5. Op. at 1036, second paragraph of section III.B.2: Delete

Counsel's unreasonable failure to investigate and present the factual and legal basis of Lin's asylum claim would itself place her actions outside of the range of competent assistance of counsel under *Strickland*. Before exercising reasonable professional judgment over what facts and legal theories to advance to the IJ, she had to investigate Lin's case sufficiently to learn what those facts were. *See Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2538–39, 156 L.Ed.2d 471 (2003) (holding that "alleged choice" not to present a conceivable defense,

when following an unreasonable investigation that failed to discover basis for that defense, is itself unreasonable) (citing *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052).

and replace with

Counsel's unreasonable failure to investigate and present the factual and legal basis of Lin's asylum claim would itself amount to ineffective assistance of counsel. *Cf. Escobar–Grijalva v. INS*, 206 F.3d 1331, 1335 (9th Cir.2000) (holding that attorney who was unprepared to argue and unknowledgeable about the facts of an asylum case could not have provided effective assistance of counsel), *amended on other grounds by* 213 F.3d 1221 (9th Cir.2000).

and combine with subsequent paragraph.

6. Op. at 1037, III.B.4 heading: Change "**Failure of advocacy at trial**" to "**Failure of advocacy at the hearing**"

7. Op. at 1038, lines 5–9 of Section III.B.6: Delete

We address the question of prejudice below; here we focus solely on the performance prong posed in *Mohsseni Behbahani*, i.e., whether the facts allow the inference "that competent counsel would have acted otherwise." 796 F.2d at 251.

and replace with

We address the question of prejudice below; here we focus solely on whether counsel's performance rendered "the proceeding ... so fundamentally unfair that [Lin] was prevented from reasonably presenting his case." *Lopez*, 775 F.2d at 1017.

8. Op. at 1038, third paragraph of section III.B.6: Delete

We do not require that Lin's representation be brilliant, but it must be "within the wide range of reasonable professional assistance," such that "under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (citation and internal quotation marks omitted).

and replace with

We do not require that Lin's representation be brilliant, but it cannot serve to make Lin's immigration hearing "so fundamentally unfair that [he] was prevented from reasonably presenting his case." *Lopez*, 775 F.2d at 1017.

9. Op. at 1038, fourth paragraph of section III.B.6: Delete

the record compels the conclusion that competent counsel would not have been as woefully unprepared to present Lin's case as counsel was *on the day that she did so before the IJ*. We conclude that the quality of her representation of Lin fell outside the wide range of professionally competent assistance.

and replace with

the record compels the conclusion that counsel providing effective assistance would not have been as woefully unprepared to present Lin's case as Lin's counsel was *on the day that she did so before the IJ*. We conclude that the quality of her representation deprived Lin of his Fifth Amendment due process right to a full and fair hearing.

10. Op. at 1038, line 6 of Section III.C: Delete "To prove he was prejudiced by counsel's incompetence" and replace with "To prove he was prejudiced by counsel's alleged ineffectiveness".

11. Op. at 1040, last line of third paragraph of section III.C.1.a: Delete "incompetent assistance" and replace with "ineffective assistance."

12. Op. at 1043, lines 4–7 of Section III.C.3: Delete

Because we hold that Lin, a minor, had not waived the right to be represented by competent counsel in the hearing before the IJ, and that counsel's performance was incompetent, it follows that Lin cannot be held to have waived the right to make arguments based on these assertions unless competent counsel has done so.

and replace with:

Because we hold that Lin, a minor, had not waived the right to be represented by effective counsel in the hearing before the IJ, and that counsel's performance was ineffective, it follows that Lin cannot be held to have waived the right to make arguments based on these assertions unless effective counsel has done so.

13. Op. at 1044, last three lines of page: Delete citation to *Strickland*: *Cf. Strickland*, 466 U.S. at 692, 104 S.Ct. 2052 ("Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice.").

14. Op. at 1045, lines 10–14 of first full paragraph: Delete

Counsel's incompetence at the hearing denied Lin a full and fair opportunity to present his case before the IJ, and thus violated his Fifth Amendment right to due process. The BIA's conclusion that counsel's incompetent performance was not prejudicial is error

and replace with

Counsel's ineffective assistance at the hearing denied Lin a full and fair

opportunity to present his case before the IJ, and thus violated his Fifth Amendment right to due process. The BIA's conclusion that counsel's ineffective assistance was not prejudicial is error

The full court was advised of the petition for rehearing en banc and the proposed amendments included herein. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the non-recused active judges in favor of en banc consideration. *See* Fed. R.App. P. 35.

The opinion as amended is filed simultaneously with this order. No further petitions for rehearing or rehearing en banc will be entertained.

The petition for panel rehearing and the petition for rehearing en banc are **DENIED.**

## OPINION

BETTY B. FLETCHER, Circuit Judge:

Jie Lin ("Lin") petitions for review of the Board of Immigration Appeals ("BIA") denial of his motion to reopen his application for asylum, withholding of removal, and relief under the Convention Against Torture.[1] He asserts that his claims were prejudiced due to ineffective assistance of counsel. Lin's mother bore a second child in violation of China's mandatory limits on procreation, which Lin alleges led to persecution of her and her family, including him. Lin argues that his prior counsel presented no legal argument in Lin's hearing that he warranted refugee status—either on a basis derivative of the persecution of his parents or based on his own previous persecution, which he claims will recur if he is returned to China—and that Lin's counsel failed to discover critical facts, in part because she expected to be able to substitute other counsel to represent Lin. We grant the petition and remand for further proceedings before the BIA.

## I. JURISDICTION

We have jurisdiction to review the BIA's Order dismissing Lin's Motion to Reopen under 8 U.S.C. § 1252(b)(2). The BIA acknowledged in its Order of Dismissal that Lin has met the three procedural requirements for pursuing an ineffective assistance of counsel claim listed in *Matter of Lozada,* 19 I. & N. Dec. 637, 1988 WL 235454 (BIA 1988), which were adopted by this court in *Lata v. INS,* 204 F.3d 1241, 1246 (9th Cir.2000). Specifically, Lin furnished the BIA with an affidavit describing in detail his agreement for representation by his prior counsel, informed her of his allegations against her and afforded her the opportunity to respond to them; and reported that he had filed a complaint against prior counsel with the appropriate state bar.

## II. FACTS AND PROCEDURE

On January 27, 2001, Lin arrived at Los Angeles International Airport on a flight from China. He had been advised to try to appear to be part of another Chinese family traveling on the same flight. He was found alone in an airport restroom and taken for interrogation. Lin was 14 years old, could not speak English, and had no knowledge of the American legal system. He was immediately placed in detention by

---

1. Lin's ineffective assistance of counsel claim requires a remand to the BIA for reopening his case, whereupon the BIA must consider all claims properly before it. In most of our analysis, therefore, we need not distinguish among the various forms of relief Lin requests. For brevity's sake we will refer only to Lin's "asylum" claim, except where context makes further specification necessary.

the Immigration and Naturalization Service ("INS"). A removal hearing was scheduled for February 6, 2001.

On that date, Lin informed the Immigration Judge ("IJ") that his family in New York was arranging for an attorney to represent him. Lin's relative, Zhong Qin Lin ("Zhong"), contacted an attorney about representing Lin. In three successive hearings, on February 20, February 27, and March 6, 2001, counsel informed the IJ by phone that, while she had spoken to Lin's family, she had not yet been retained. A pro bono attorney, Stephen Conklin, represented Lin during a March 8, 2001 hearing, during which New York counsel finally indicated by phone that she had been retained. Counsel's phone number was provided to Lin on that date.

Counsel obtained continuances of the hearings scheduled on March 22 and April 12. At the latter hearing, both the IJ and the INS attorney reminded counsel that her client was an incarcerated minor and admonished her that she should not take cases so far from New York if she could not appear at the hearings. After counsel indicated that she was unavailable to attend a hearing on the West Coast for the next three months, the IJ told counsel that the hearing would take place on July 9, 2001 without fail.

During this period, from February 6 until July 9, 2001, Lin claims that counsel never met with him in person, nor interviewed him, nor spoke directly to him. In an uncorroborated declaration presented to the BIA at its hearing on the Motion to Reopen, counsel stated that she spoke with Zhong about Lin's case several times in depth, and that she spoke with Lin as well.[2]

On July 9, the date of the adjourned hearing, counsel was not present. The IJ called her in New York, pointed out that everyone else was present, and asked where she was. She stated that two weeks ago she had arranged for a local immigration attorney, Martin Guajardo ("Guajardo"), to take on the case and appear on Lin's behalf, and that she had sent him the materials regarding the case. The IJ called Guajardo's office. He was informed that Guajardo was at that moment appearing in another case and that Lin's hearing was not listed on his calendar. Guajardo's office said that it would contact him; the IJ suggested that New York counsel be called as well. The court then went off the record.

When the court came back on the record, the IJ was on the phone with New York counsel. She ostensibly was representing Lin by telephone. The transcript suggests that the court was not well-equipped for a telephonic hearing. Both counsel and those in the courtroom experienced some problems with hearing one another over the telephone, although the parties dispute the extent and significance of these problems. In the midst of the hearing, while Lin's counsel was questioning him, the clerk relayed a message from Guajardo saying that he had been asked to take over the case, but had not been retained, and so did not appear. New York counsel stated that she had sent him "the actual case and the money." She began to explain the circumstances at length. The IJ tried to interrupt her, saying "I don't need to hear anymore" and interjecting her name several times during her explanation; when she stopped talking the IJ simply said "let's just go on." New York counsel then concluded her examination of

---

**2.** The government argues that a passage in a hearing transcript shows that Lin admitted having recently spoken to counsel. The transcript is ambiguous, but the statement appears to have been made by someone other than Lin.

her client, which by any measure was clearly inadequate; the IJ then took over the questioning.

After several questions by the government, Lin's counsel declined the opportunity for redirect examination. Her entire argument to the court following testimony is recorded in the transcript as follows:

> Your honor, I believe that we do have a strong case, but, regarding (indiscernible) that his family suffered persecution because of their violation of the family planning policy and the parents ran away from home (indiscernible) leaving the respondent (indiscernible) grandparents. Even after that, they didn't have any (indiscernible). (Indiscernible) request for the fine and he couldn't go to school. I (indiscernible) he will, he will be (indiscernible) one of the (indiscernible) grounds for asylum (indiscernible) eligible to be a refugee.

To the extent that it is possible to discern what counsel was saying, it appears to be a reiteration of facts adduced at the hearing, followed by a conclusory legal argument that Lin qualified as a refugee and warranted asylum.

At the end of the hearing, the IJ denied Lin's application for asylum. He made relatively few factual findings. Among them were: Lin resided in a village within Fujian province in China, and his parents had a second child in violation of China's mandatory limits on procreation.[3] At some point, Lin's parents and younger brother abandoned their residence and went into hiding, sending Lin to live with his maternal grandparents. Government authorities levied what Lin believed to be a 50,000 renminbi fine against his parents, but were unable to locate them so that they could collect it. They later tried to collect this fine from Lin's grandparents. Finally, either a parent or grandparent eventually arranged for Lin to leave for the United States using a false passport. The IJ also noted that parts of Lin's testimony at his hearing contradicted portions of his sworn statement to his interrogators at the airport, the latter including a statement that he had come to the United States to attend school.[4] Lin now disavows some of the particulars of his responses given at the airport, attributing misstatements to fatigue and fright.

More generally, the IJ found that Lin had simply failed to carry his burden to provide "believable, consistent and detailed" testimony that could "provide a plausible and coherent account for the basis of his alleged fear." Lin provided "no documentation in support of his claim for asylum, no identification documents, no evidence in support of any of the testimony [he] provided ... during the course of his examination." What testimony Lin did provide was "lacking in any detail and insufficient to provide corroboration."

---

**3.** Publications in the record describe the population control policy applied to Fujian Province as "generally a one-child policy," although "in some southern urban areas, if the parents' first child is female, they may apply after a set number of years (usually 4) to conceive another child in the hope that it will be a male." *China: Profile of Asylum Claims and Country Conditions*, 21, U.S. Dept. of State, April 14, 1998. "Disciplinary measures against those who violate the policy can include stiff fines, withholding of social services," and other civil penalties. *Id.* at 20. "[T]he fine for violating birth quotas is three times a couple's annual salary, to be paid over a 12 to 13 year period." *China: Country Reports on Human Rights Practices—2000*, 13, U.S. Dept. of State, February 2001.

**4.** This statement strikes us as possibly evasive rather than factually inaccurate. The record indicates that Lin did intend to attend school in the U.S. while living with Zhong. In any event, although he did attend school just prior to leaving China, whether he could continue to do so is unclear.

While finding that a fine was levied against the parents, and later applied to the grandparents, the IJ found "no past persecution nor ... present persecution since government authorities have in no way attempted to punish, imprison, detain or inflict either mental or physical harm upon [Lin] for the failure of [his] parents or grandparents to comply with the coercive family practice in China."

Lin appealed. New York counsel filed a one-page attachment to his Notice of Appeal on his behalf on July 26, 2001. In it, she made six arguments: that the IJ did not give proper weight to Lin's testimony; that the IJ did not account for Lin's young age in evaluating his testimony; that the adverse credibility finding was in error; that the factual finding that Lin had not suffered personal harm was in error; that persecution of parents makes their children eligible for asylum, because, for example, the sterilization of Lin's mother led to her poor health; and that Lin would be jailed and tortured upon being returned to China as punishment for having departed illegally. These last two arguments were raised on the appeal for the first time, and apparently no evidence was provided with respect to either. Although counsel indicated that she would file a brief, none was filed.

In its decision affirming the IJ, the BIA held that the issue of Lin's punishment upon return to China had been defaulted. The BIA also fleshed out the factual record slightly. It noted that Lin had been unable to continue attending school at some point due to his grandfather's inability to pay either the fine or school tuition—tuition not being free for children of multi-child families—but that Lin had been attending school just prior to leaving China.

The BIA opinion stated, apparently in response to the bare assertion in the Notice of Appeal, that Lin's mother, Shui Xian Zheng ("Zheng"), had been forcibly sterilized.[5] The opinion stated that the grant of refugee status under 8 U.S.C. § 1101(a)(42) for individuals subjected to forced abortion, voluntary sterilization, or persecution for refusal to undergo such a procedure or other resistance to coercive population control programs would not necessarily apply to Lin. It noted that its precedents including *Matter of C–Y–Z–*, 21 I. & N. Dec. 915, Dec. 3319, 1997 WL 353222 (BIA 1997) ("*CYZ*") and *Matter of X–P–T–*, 21 I. & N. Dec. 634, 1996 WL 727127 (BIA 1996) ("*XPT*"), applied this section both to "the individual ... and that person's spouse," but "have not, however, extended the reach of that definition to other family members who may have been impacted by the persecution that was directed at the spouses, but who have not themselves been subjected to, or threatened with subjection to, a forced abortion or involuntary sterilization." *In re Jie Lin* (unpublished BIA disposition, Nov. 28, 2001).

Lin subsequently obtained his present *pro bono* counsel who, one day before Lin was scheduled to be removed, moved for a stay of deportation and to reopen proceedings before the BIA. Lin now claims that his prior counsel's ineffective assistance kept evidence on the merits from being presented to the IJ or on direct appeal, and that she failed to present the basic legal elements of a claim for asylum.

Lin supported this motion with substantial new documentation that, he argued, a counsel offering effective assistance should have discovered and submitted. Contacted by Lin's present counsel prior to the motion to reopen, Zheng offered documen-

---

**5.** Zheng's declaration recounting her relevant history, including her forced sterilization, is dated February 20, 2002, and thus submitted after the first BIA decision.

tary evidence that she was involuntarily sterilized after she was apprehended on a visit to her parents in 1998. The government does not offer any basis to dispute that this event took place.

Lin also presented other new evidence of persecution of his family, himself, and other children of multichild families. The government disputes or discounts much of this evidence. Zheng asserted that in circumstances when other families were faced with similar fines to that levied on her, the Chinese authorities would often arrest, beat, and incarcerate one child of a multi-child family until the fine was paid. The government acknowledges that having a second child was often punished by fines, but claims that evidence does not prove that the "fine" applied to Lin was anything other than an ordinary bill for school tuition, and that Lin left school only because his grandfather could not pay this fee.

Lin also asserted in his affidavit supporting the motion to reopen that while he was visiting Zheng's home to take exams, men ransacked the home, sought Zheng's whereabouts, and threatened him. In her affidavit, Zheng asserted her belief that they were from the local family-planning police and had come to her home because she had not paid the fine. Lin said that he had to hide, and at various times flee from school, because government authorities were looking for him. Although the IJ expressed concern about Lin's credibility, the BIA did not predicate either of its rulings on lack of credibility.

The BIA denied Lin's motion to reopen. Regarding the competence of Lin's prior counsel's assistance, it noted her testimony that she had spoken to Lin and to Zhong several times about the case and had been honest about the weakness of his claim and the need for documentary evidence. The BIA found that Lin had not shown that his prior counsel's failure to appear in person

had deprived him of a full and fair opportunity to present his claim for relief. Regarding prejudice, it stated that in ruling on the direct appeal it had "fully reviewed the record and provided a thorough analysis of the merits of [Lin's] claim." It noted that its decision had not been based upon a credibility finding or the lack of corroborating evidence, and emphasized that Lin had not demonstrated how different counsel might have satisfactorily demonstrated the "on account of" element required for proving refugee status in light of its construction of 8 U.S.C. § 1101(a)(42). The BIA concluded that Lin had failed to show prejudice. Lin timely petitioned for our review.

### III. ANALYSIS

### A. STANDARD OF REVIEW

#### 1. Motion to reopen

■ This court reviews the BIA's factual findings for substantial evidence. *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir.1995). The BIA's ruling on a motion to reopen is reviewed for abuse of discretion. *Rodriguez–Lariz v. INS*, 282 F.3d 1218, 1222 (9th Cir.2002). Questions of law are reviewed *de novo*. *Id.* Claims of due process violations in deportation proceedings, due *inter alia* to ineffective assistance of counsel, are reviewed de novo. *Id.* The BIA abuses its discretion only when it has acted "arbitrarily, irrationally, or contrary to law." *Singh v. INS*, 213 F.3d 1050, 1052 (9th Cir.2000).

#### 2. Ineffective assistance of counsel claim

■ "Ineffective assistance of counsel in a deportation proceeding is a denial of due process under the Fifth Amendment if the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Lopez v.*

INS, 775 F.2d 1015, 1017 (9th Cir.1985). We have also held that "[d]ue process challenges to deportation proceedings require a showing of prejudice to succeed." *Rodriguez–Lariz*, 282 F.3d at 1226.

■ We review findings of fact regarding counsel's performance for substantial evidence. *Monjaraz–Munoz v. I.N.S.,* 327 F.3d 892, 895 (9th Cir.2003). Lin argues that his prior counsel's performance was deficient in three broad but related areas. First, her lack of preparation prevented her from researching and presenting basic *legal* arguments fundamental to the asylum claim. Second, her lack of investigation left her unable to present critical *facts* to support Lin's claim. Third, she failed in various areas of *practice,* such as failing to interview her client and presenting argument ineffectively by absenting herself from the hearing.

Determining whether prejudice flowed from counsel's ineffectiveness in failing to investigate and present critical facts requires us to examine facts that were uncovered by his new counsel. Substantial critical evidence was discovered and attached to the motion to reopen. Apparently the BIA in rejecting the motion did not consider or give weight to the new evidence.

■ While we ordinarily grant deference to BIA findings of fact, in these circumstances we must review the new evidence *de novo* to determine whether prejudice resulted from prior counsel's failure to investigate. *See United States v. Quintero–Barraza,* 78 F.3d 1344, 1347 (9th Cir.1995) (requiring *de novo* review of whether the facts sufficed to establish prejudice). We find prejudice "when the performance of counsel was so inadequate that it *may* have affected the outcome of the proceedings." *Castillo–Perez v. INS,* 212 F.3d 518, 527 (9th Cir.2000) (emphasis added).

## B. COMPETENCE OF COUNSEL'S PERFORMANCE

■ Lin asserts several grounds on which counsel's representation constituted ineffective assistance of counsel. For clarity of discussion, we group them under five headings. No single factor need be dispositive in establishing the claim.

### 1. *Contact with client*

It is not clear even from counsel's declaration that she ever actually spoke to Lin about the *substance* of his case, nor is there any other evidence aside from her own declaration that she spoke to Lin at all. There is no evidence that she conducted any research specifically on Lin's claim or prepared him for his hearing. None of her behavior in the hearing contradicts Lin's stated hypothesis that her preparation for the hearing consisted of nothing more than reading over Lin's brief written statement to her shortly before the hearing began. Her assertion that she had sent "the actual case and the money" to Guajardo and her evident expectation that she would not be responsible for argument before the IJ strongly suggest that her contact with Lin was inadequate. Given the factual uncertainties over what degree of contact she did have with Lin and how much preparation she undertook, however, we do not base our finding of ineffectiveness entirely on this claim.

### 2. *Preparation of the case*

The BIA notes counsel's uncorroborated assertion that she "relied heavily" on conversations with Zhong, Lin's New York relative, wherein she informed him of the need for documentary evidence, and that she had several phone conversations with Lin. It does not adopt these as findings, nor does it find that the content of any

conversations with Lin were about the substance of the case as opposed to prodding Zhong to finalize arrangements to retain her. The BIA makes no finding that counsel's preparation for the hearing extended beyond these conversations of unknown content. The balance of the record offers little evidence that she engaged in more than a perfunctory review of the facts of the case prior to the hearing. Counsel never collected available material testimony and documentary evidence, and never presented to the IJ the "basics" of his claim: that Zheng was forcibly sterilized,[6] the significance of the large fine,[7] that government persecution forced him to hide and drop out of school, and a legal argument that Lin qualified as a refugee on account of a protected status.

■ Counsel's unreasonable failure to investigate and present the factual and legal basis of Lin's asylum claim would itself amount to ineffective assistance of counsel. *Cf. Escobar–Grijalva v. INS*, 206 F.3d 1331, 1335 (9th Cir.2000) (holding that attorney who was unprepared to argue and unknowledgeable about the facts of an asylum case could not have provided effective assistance of counsel), *amended on other grounds by* 213 F.3d 1221 (9th Cir.2000). If counsel was unprepared to present Lin's claim, she should have sought to withdraw as counsel, even as late as the date of the hearing. Lin's right to a full and fair presentation of his claim included the right to have an attorney who would present a viable legal argument on his behalf supported by relevant evidence, if he could find one willing and able to do so. *See* 8 U.S.C. § 1362 (recognizing right to privately retained counsel); *Rios–Berrios v. INS*, 776 F.2d 859, 863 (9th Cir.

1985) (granting relief because petitioner's "asylum case will be more advantageously presented by retained counsel"). Zhong indisputably tried to arrange such representation on Lin's behalf. Prior counsel's pretense that she would offer such representation denied Lin the opportunity to seek an attorney who *would* research, investigate, and present his legal claim, and thus denied him due process.

The above principles apply to all asylum claims, but our concern about their proper implementation is intensified when the petitioner is a minor. Indeed, the right of minors to competent counsel is so compelling that we have joined other circuits in holding that a "guardian or parent cannot bring a lawsuit on behalf of a minor in federal court without retaining a lawyer." *Johns v. County of San Diego*, 114 F.3d 874, 876 (9th Cir.1997). In *Johns*, we joined the Second and Third circuits in endorsing the holding of *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir.1986) (per curiam). We explained:

> The choice to appear pro se is not a true choice for minors who under state law, see Fed.R.Civ.P. 1(b), cannot determine their own legal actions. There is thus no individual choice to proceed pro se for courts to respect, and the sole policy at stake concerns the exclusion of non-licensed persons to appear as attorneys on behalf of others.

> It goes without saying that it is not in the interest of minors or incompetents that they be represented by non-attorneys. Where they have claims that require adjudication, they are entitled to trained legal assistance so their rights may be fully protected.

6. As noted, a bald assertion to this effect is attached to the Notice of Appeal, but it was not raised before the IJ, and counsel presented no evidence to support it.

7. Contrary to Lin's assertion, counsel did note the existence of the fine. But she did not present the context that would make its significance to his claim apparent.

*Johns*, 114 F.3d at 876–77 (citations omitted).

### 3. *Failure to attend the hearing*

After two continuances, the IJ criticized counsel for taking West Coast asylum cases when she was unable to appear. After a continuance of several months, she reluctantly agreed to participate in the hearing by telephone after receiving a call from the IJ commanding her to do so. Lin claims that she was unable to participate fully in the hearing by telephone. The transcript of the hearing demonstrates that the courtroom was not well-equipped for a telephonic hearing, and that New York counsel could neither hear nor be heard clearly at numerous points. For example, counsel did not hear Lin's answer when she asked him what consequences he would face if he were returned to China. This is critical, given that the government argues that Lin may not raise on appeal the argument that he will be jailed for having fled the country in contravention of Chinese law. Further, counsel clearly had no opportunity to consult with Lin before the hearing, nor had she prepared for the hearing. The government argues that counsel's effectiveness was not vitiated by her appearance by telephone rather than in person. This may be true, but only in the damning sense that counsel was so unprepared to argue the case that it hardly mattered whether she was heard at all.

### 4. *Failure of advocacy at the hearing*

Lin asserts that his counsel asked very few questions, all taken from a half-page summary of his situation that Lin had previously sent her at the IJ's urging.

She was hampered because she had not heard his answers fully nor had she discovered the critical information necessary to establish Lin's asylum claim. She failed to argue at all that Lin's flight was "on account of" persecution or fear of future persecution, and offered no theory as to why he was part of a protected group. She also made no attempt to rehabilitate Lin after a damaging cross-examination.

### 5. *Failure to pursue the direct appeal*

In the direct appeal, counsel did nothing to rectify the errors made in her presentation to the IJ. Although she advised the BIA that she would submit a brief, she neither did so nor requested an extension, and still never interviewed Lin. The BIA noted in dismissing the motion to reopen[8] that it did not reject the direct appeal on the ground that counsel had failed to file a brief, a disposition that would have been within its discretion. However, in the context of her earlier actions, the failure to file a brief compounded the ineffectiveness of her assistance.

### 6. *Conclusion regarding competence of counsel's performance*

The BIA's conclusion that the deficiencies in counsel's performance did not constitute ineffective assistance of counsel turns on its legal determination that greater effort was not required because Lin fails to show that another counsel could have made a viable case for refugee status. We address the question of prejudice below; here we focus solely on whether counsel's performance rendered "the proceeding ... so fundamentally unfair that [Lin]

---

8. While the BIA states that it had already "fully reviewed the record" in analyzing the merits of Lin's claim on direct appeal, that record did not include the evidence presented by Lin's current counsel in her motion to reopen, including declarations by Lin and Zheng, the sterilization certificate, and the notice of the fine. The BIA's assertion is untenable. The evidence reviewed by the IJ and the BIA on direct appeal differs materially from that filed with the motion to reopen.

was prevented from reasonably presenting his case." *Lopez*, 775 F.2d at 1017.

■ Lin had a statutory right, in his removal proceedings and his appeal, to be "represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose." 8 U.S.C. § 1362. "Although a deportation hearing is not a criminal matter and[an alien has] no Sixth Amendment right to appointment of counsel at government expense, due process mandates that he is entitled to counsel of his own choice at his own expense under terms of the Immigration and Nationality Act." *Rios–Berrios v. INS*, 776 F.2d at 862 (citation omitted).

■ Having retained counsel, as was his legal right, Lin was entitled to have that counsel perform with sufficient competence. *See Lopez*, 775 F.2d at 1017. We do not require that Lin's representation be brilliant, but it cannot serve to make Lin's immigration hearing "so fundamentally unfair that [he] was prevented from reasonably presenting his case." *Lopez*, 775 F.2d at 1017.

Counsel's actions in this case do not clear even this low bar. She was unprepared; had not expected to argue; did not seek out the evidence she should have found; did not present effectively the evidence she had at hand; presented no legal framework for an asylum claim; and left her client alone, bewildered, and unrehabilitated as a witness. None of this was "trial strategy," sound or otherwise. Indeed, her actions left Lin worse than unrepresented, because her acquiescence in proceeding as counsel for the hearing kept the IJ from taking further remedial action. Whatever minimal prior contact counsel may have had with Zhong—or with Lin—the record compels the conclusion that counsel providing effective assistance would not have been as woefully unpre-

pared to present Lin's case as Lin's counsel was *on the day that she did so before the IJ*. We conclude that the quality of her representation deprived Lin of his Fifth Amendment due process right to a full and fair hearing. We proceed to consider whether Lin was prejudiced as a consequence of this deficiency.

## C. *PRESENCE OF SUBSTANTIAL PREJUDICE*

■ By choosing to brief the merits, both parties appear to recognize that we must assess whether Lin was prejudiced by counsel's incompetence. We must consider the underlying merits of the case to come to a tentative conclusion as to whether Lin's claim, if properly presented, would be viable. To prove he was prejudiced by counsel's alleged ineffectiveness, Lin "only needs to show that he has *plausible* grounds for relief." *United States v. Jimenez–Marmolejo*, 104 F.3d 1083, 1086 (9th Cir.1996) (emphasis added). We need not conclude that Lin would win or lose on any claims, only that his claims merit full consideration by the BIA.

### 1. *Establishing refugee status*

■ To prevail in his asylum claim, Lin must show that he qualifies as a refugee under 8 U.S.C. § 1101(a)(42) by establishing that (1) he has been a victim of persecution, (2) he is a member of a protected group, (3) his protected group status is known to or imputed by the persecutors, and (4) the ensuing persecution is "on account of" this status. *Popova v. INS*, 273 F.3d 1251, 1257 (9th Cir.2001). "Protected group" status under § 1101(a)(42) may include "race, religion, nationality, membership in a particular social group, or political opinion."

His counsel's argument at the hearing that Lin qualified as a refugee, to the

extent that it was discernible, was conclusory. Her legal argument on behalf of Lin on direct appeal was predicated only on a newly raised claim, presented without evidence or reference to the governing statute, that if returned to China he would be punished for fleeing the country. In his ineffective assistance of counsel claim, Lin asserts two bases for a conclusion that he has refugee status: that he faces persecution on account of his membership in a social group consisting of his nuclear family, and that his parents' political opinions regarding family planning are imputed to him.

■ a. *Family membership as a basis for protected "social group" refugee status:* Lin claims his nuclear family was persecuted in China as a result of his parents' resistance to the mandatory limits on procreation. The BIA has held in *Matter of Acosta,* 19 I. & N. Dec. 211, 232, 1985 WL 56042 (BIA 1985), that a family may qualify as a "social group" under § 1101:

> [P]ersecution that is directed toward an individual who is a member of a group of persons all of whom share a *common, immutable characteristic* ... *such as sex, color, or kinship ties,* ... [will only qualify under § 1101 when] the common characteristic that defines the group [is] one that the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences.

(emphasis added). As lucidly explained in *Hernandez–Montiel v. INS,* 225 F.3d 1084, 1092 (9th Cir.2000), the

> First, Third, and Seventh Circuits have adopted *Acosta*'s immutability analysis. *See Ananeh–Firempong v. INS,* 766 F.2d 621, 626 (1st Cir.1985) (recognizing *Acosta* in determining that family relations can be the basis of a "particular

social group"); *Fatin* [*v. INS* ], 12 F.3d [1233, 1239–41 (3d Cir.1993)] (noting that the subgroup of Iranian feminists who refuse to conform to the government's gender-specific laws and social norms could satisfy the statutory concept of "particular social group") (internal quotation marks omitted); *Lwin v. INS,* 144 F.3d 505, 511–12 (7th Cir.1998) (recognizing parents of Burmese student dissidents as part of a social group because they share a "common, immutable characteristic").

Like our sister circuits, we recognize that a family is a social group. *Sanchez–Trujillo v. INS,* 801 F.2d 1571, 1576 (9th Cir.1986) ("Perhaps a prototypical example of a 'particular social group' would consist of the immediate members of a certain family, the family being a focus of fundamental affiliational concerns and common interests for most people."); *accord Iliev v. INS,* 127 F.3d 638, 642 & n. 4 (7th Cir.1997) (citing *Sanchez–Trujillo* and concluding "a family constitutes a cognizable 'particular social group' within the meaning of the law"), *Gebremichael v. INS,* 10 F.3d 28, 36 (1st Cir.1993) (citing *Ravindran v. INS,* 976 F.2d 754, 761 n. 5 (1st Cir.1992)) (explicitly adopting *Sanchez–Trujillo* formulation). But unlike them, we do not automatically confer "social group" status on the family for the purposes of § 1101. *See Estrada–Posadas v. United States INS,* 924 F.2d 916, 919 (9th Cir.1991) (rejecting petition of Guatemalan woman where refugee status was based on sole ground that her maternal uncle and cousin had suffered persecution).

Rather, our circuit recognizes that some attenuated family links will not *per se* suffice to confer "particular social group" membership. *Compare id.* (finding no evidence that the petitioner had been persecuted at all, or that she lived with her persecuted family members, or was other-

wise readily identifiable as a member of their family unit) *and Arriaga–Barrientos v. U.S. INS*, 937 F.2d 411, 414 (9th Cir. 1991) ("The abduction of two geographically distant brothers by unknown gunmen for unknown reasons does not establish a well-founded fear.") *with Mgoian v. INS*, 184 F.3d 1029, 1036 (9th Cir.1999) (granting asylum petition and noting "it should now be clear that a pattern of persecution *targeting a given family* that plays a prominent role in a minority group that is the object of widespread hostile treatment supports a well-founded fear of persecution by its surviving members") (emphasis added).

*Arriaga–Barrientos* clarifies that, where family membership is concerned, "acts of violence against a petitioner's friends or family members may establish a well-founded fear, notwithstanding an utter lack of persecution against the petitioner herself," where the pattern of violence is "closely tied" to the petitioner. 937 F.2d at 414. In practice, where family membership is proposed as the "particular social group" status supporting a claim of refugee status, this prong of the test melds with the "on account of" prong. Where family membership is a sufficiently strong and discernible bond that it becomes the foreseeable basis for personal persecution, the family qualifies as a "social group." Where it is not plausibly the basis for such persecution, it will not matter whether the family is a "social group" or not because refugee status will be denied on the "on account of" prong in any event.

We hold that Lin thus had a plausible claim for refugee status as a member of a particular social group—his immediate family—if he could demonstrate a well-founded fear of persecution on account of that status and that it was prejudiced by counsel's ineffective assistance. *See Jimenez–Marmolejo*, 104 F.3d at 1086.

The expanded record suggests that the Chinese government was inclined to go to extraordinary lengths to punish Lin's family, that it had identified him personally and directed at least some part of the punishment at him personally, that Lin was separated from his parents as a child as a result of this government activity, that he was threatened personally when his mother's house was ransacked, and that he was in personal danger of further punishment "on account of" his family status if he returned to China.[9] The government argues that Lin was not prejudiced on direct appeal because the BIA had been presented all of the facts regarding Lin's personal experience of persecution and "basically the same claims[were] presented in Lin's motion to reopen before the court and in his brief." It notes that his counsel did manage to present the arguments that Lin "established persecution because when he couldn't pay the fine, he couldn't go to school," and that "Lin's family suffered persecution because of their violation of the family planning policy."

We acknowledge that counsel did present *some* of the factual basis of Lin's claim. But the presentation of a few bare facts, without documentation and without the factual context that gives them meaning or the analytical context that gives them their power, does not suffice to place the critical issues squarely before the tribunal that must consider them. *See Tri–Valley Packing Ass'n v. FTC*, 329 F.2d 694, 704 (9th Cir.1964) (attributing failure of administrative commission to address party's ar-

---

9. Even though such punishment would be administered through the state's legal system, the fact that it would not derive from Lin's own activities, but from those of his parents, plants it squarely in the category of "persecution" rather than "prosecution." *See, e.g., Ratnam v. INS*, 154 F.3d 990, 995 (9th Cir. 1998).

gument to fact that while party presented "the factual basis upon which this argument is made, it did no more than suggest the legal question which it now urges"). The facts supporting Lin's claim were either absent from the record before the IJ and BIA on direct appeal or were presented in a conclusory fashion, bare of support and analytical context. Only with the motion to reopen—containing both the necessary analysis and the critical evidence from Zheng's affidavit about her own history and the prospect that Lin would *personally* be subject to penalties—was the proper context for Lin's claim of prospective persecution presented to the BIA.

The expanded record attached to the motion to reopen shows that Lin's claim could have been competently presented. The BIA's assertion that there was no material difference between the product of counsel's ineffective assistance and that provided by Lin's current pro bono counsel suggests that it has not yet considered the record assembled by *competent* counsel. Counsel's utter failure to discover facts and present supporting legal analysis thus clearly prejudiced Lin.

**b.** ***Refugee status via imputed political opinion***: Aside from Lin's membership in his nuclear family, the particular basis of his family's persecution may justify his refugee status. Congress has made plain that the forced sterilization of Zheng, if it occurred, constitutes persecution by the terms of 8 U.S.C. § 1101(a)(42)(B), which states in pertinent part that:

> For purposes of determinations under this Act, a person who has been forced to abort a pregnancy or to undergo involuntary sterilization, or who has been persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program, shall be deemed to have been persecuted on account of political

opinion, and a person who has a well founded fear that he or she will be forced to undergo such a procedure or subject to persecution for such failure, refusal, or resistance shall be deemed to have a well founded fear of persecution on account of political opinion.

Zheng's forced sterilization qualifies under the first clause of this subsection. This persecution can be imputed to Lin's father, whose reproductive opportunities the law considers to be bound up with those of his wife. *See He v. Ashcroft*, 328 F.3d 593, 604 (9th Cir.2003). *He* cites *CYZ* as follows:

> the applicant in this case has established eligibility for asylum by virtue of his wife's forced sterilization. This position is not in dispute, for the Service conceded in its appeal brief that the spouse of a woman who has been forced to undergo an abortion or sterilization procedure can thereby establish past persecution. *Cf. Matter of Kasinga*, Interim Decision 3278, 1996 WL 379826 (BIA 1996).

Inasmuch as the applicant has adequately established that he suffered past persecution, there is a regulatory presumption that he has a well-founded fear of future persecution under 8 C.F.R. § 208.13(b)(1) (1997). We reject the Service's assertion that an alien who has established past persecution has an additional burden of establishing a well-founded fear of future persecution by demonstrating that the involuntary sterilization was carried out in such a way as to amount to an "atrocious form" of persecution. There is no additional burden of this nature, either by regulation or by statute. The applicant need not demonstrate compelling reasons for being unwilling to return resulting from the severity of the past persecution unless the presumption under 8 C.F.R.

§ 208.13(b)(1)(I) has been rebutted by the Service.

21 I. & N. Dec. at 919–20.

As the BIA notes in its opinion, it has not addressed whether this persecution on account of political opinion can be imputed to the *children* of such parents. However, the logic of *CYZ* may provide a basis for that result. The operative language in § 1101(a)(42) deems a person persecuted on account of political opinion if he is "persecuted for failure or refusal to undergo such a procedure or for other resistance to a coercive population control program"; it does not say that that "failure" or "refusal" or "resistance" must have been his own. The discrimination or abusive treatment of children in families with more than one child may qualify them for refugee status. In her concurring opinion in *CYZ*, Board Member Rosenberg makes just this point:

> An individual's own refusal or failure to comply with a compulsory population control program, or his or her *association* with one who expressly resists or opposes such a program, may cause such a political opinion to be *imputed* to that individual.... [T]hat individual has a reasonable fear of persecution even if he, himself, was not persecuted at all or as severely as the victim whose views are imputed to him. There is nothing in the doctrine of imputed political opinion, and indeed, it is somewhat antithetical to the doctrine, to suggest that it is only available when the persecuted victim whose views are imputed to the applicant also is applying for asylum.

21 I. & N. Dec. at 922–23 (emphasis added).

By this reckoning, Lin's parents' deliberate flouting of state mandatory limits on procreation has put Lin at risk. His mother's misfortune is deemed to be past persecution on account of political opinion; this is in turn imputed to Lin's father as a matter of law, whether or not he had ever actually expressed such an opinion or experienced such persecution directly. It is not clear that Lin is any less "in association" with his mother in this respect than is his father; the doctrine of imputed political opinion may offer no crisp method for distinguishing them.

We need not, and cannot decide these issues today. We conclude merely that Lin has a plausible claim for relief. *See Jimenez–Marmolejo,* 104 F.3d at 1086. His counsel's negligence in failing to discover and present the fact of Zheng's forced sterilization before the IJ, and in failing to present more than a bald, unsupported assertion to the BIA, foreclosed Lin's opportunity to raise this issue to the BIA or to us. Lin would have been well-situated to bring a case testing whether "past persecution on account of political opinion" established by forced sterilization of the mother may be imputed to her children as well as to her spouse.

### 2. *Credibility*

The government now raises serious concerns about Lin's having changed his story from time to time. Some of this is to be expected of a scared child in a strange country without adult supervision, or legal representation, who was neither prepared by counsel before a hearing nor rehabilitated during it. Nonetheless, it could still have been a legitimate basis for the BIA to ground its decision, and we would give such a determination deference if the record supported it. We need not address this question, however, because the BIA states that its disposition was not based on an adverse credibility finding.

### 3. *Waiver*

The government notes that Lin's assertions that his father did not live with them,

that Zheng had been sterilized, and that his family had received notice of a fine, were not raised until his motion to reopen. Because we hold that Lin, a minor, had not waived the right to be represented by effective counsel in the hearing before the IJ, and that counsel's performance was ineffective, it follows that Lin cannot be held to have waived the right to make arguments based on these assertions unless effective counsel has done so.

## D. THE BIA'S DENIAL OF LIN'S MOTION TO REOPEN

■ We need not reiterate here the specific ways in which counsel both ineffectively assisted Lin and delayed the process of adjudicating his claim. But we must note that her behavior was not the sole cause of the deprivation of Lin's due process rights that confronts us here. Rather, Lin's *claim* was prejudiced when, despite counsel's obvious lack of preparation of Lin's case, the IJ nevertheless allowed—or perhaps compelled—her to argue it almost extemporaneously.

The transcript does not make us party to the off-the-record discussion that must have taken place between Lin's counsel and the IJ after the call to Guajardo's office and prior to the resumption of the hearing. But, given counsel's prior understanding that she would not be presenting the case, and her evident lack of preparation to do so, we doubt that she was other than reluctant. Thus, the IJ shares with counsel responsibility for the denial of Lin's due process right. He should well have known what sort of representation Lin would receive.

It is clear from the record that until the day of the hearing the IJ was properly managing the case. A solitary 14-year-old was being held in government detention, and the IJ did what he could to expedite the hearing and assure that he

was represented. He set a short, two-week deadline for Lin to obtain counsel as early as February 6, and on March 6 he expressed concern about the length of time Lin had been in custody. He prodded, cajoled, badgered, and ultimately threatened counsel with a firm deadline, set much further into the future than he thought appropriate. But on the hearing date, when it became clear that Guajardo would not be representing Lin, it should have been clear that, even after almost six months in custody and despite the good faith efforts of his relatives to obtain counsel as was his right by law, Lin was still without adequate representation on hand.

At this point the IJ's options were limited. Under certain circumstances, a petitioner may be forced to proceed without counsel. This might be warranted if the petitioner were not a minor and had explicitly waived his right to counsel, or delayed the hearing in bad faith, or sat on his right to obtain counsel. *See Colindres-Aguilar v. INS*, 819 F.2d 259 (9th Cir. 1987) (finding due process violation where without questioning him IJ deemed alien who had received previous continuance to obtain counsel to be proceeding pro se when he showed up at reconvened hearing without his new counsel); *Castro-Nuno v. INS*, 577 F.2d 577, 579 (9th Cir.1978) (finding abuse of discretion and noting absence of indication that alien was delaying hearing in bad faith in not yet having obtained counsel); *cf. Vides-Vides v. INS*, 783 F.2d 1463, 1470 (9th Cir.1986) (finding no due process violation where adult alien's "failure to obtain counsel after four months and two continuances makes apparent that he simply was unable to secure counsel at his own expense.").

■ These circumstances do not apply to Lin's case. While a minor can waive the right to counsel in a deportation hearing, that waiver must be knowing, in-

telligent and voluntary. *See Murgia–Melendrez v. U.S. INS*, 407 F.2d 207, 209 (9th Cir.1969). This determination should take into account the minor's age, intelligence, education, information, and understanding and ability to comprehend. *See De Souza v. Barber*, 263 F.2d 470, 477 (9th Cir.1959). Lin's case is not even a close call: The record offers no evidence for a finding that Lin knowingly and intelligently waived his Fifth Amendment right to counsel, particularly in light of the added protections he is due as a minor. Nor is there any suggestion of undue delay or bad faith. Counsel's unpreparedness was not the fault of Lin or of his family, who had a good-faith basis to believe that they had obtained counsel able and willing to serve.

Given the near-certain prospect that Lin would be unable to present his case fully and fairly if unrepresented, the IJ could not let Lin's hearing proceed without counsel. The IJ could have capitulated and again postponed the hearing. The cost of this course was obvious: leaving Lin in detention for an even longer time while giving him and his relatives another opportunity to obtain competent counsel or himself to seek pro bono counsel for Lin. Doing so would impose a cost not only upon Lin, but upon the INS, which bore the costs of Lin's care and upkeep.

Instead, the IJ chose to proceed with the long-delayed hearing by insisting that an obviously unprepared counsel, who by her own assertion had not expected to argue this case, represent Lin. He erred in doing so. *See Rios–Berrios v. INS*, 776 F.2d 859, 862–63 (9th Cir.1985) (holding that where alien "was in custody, spoke only Spanish, had limited education, [and] was unfamiliar with this country and its legal procedures," in light of his failure to obtain counsel despite his efforts "the immigration judge, *sua sponte* if necessary, should have continued the hearing so as to provide the petitioner a reasonable time to locate counsel, and permit counsel to prepare for the hearing.").

Notwithstanding his previous pledge that the hearing would take place that day without fail, the IJ was not compelled to proceed with Lin's hearing. Given that minors are "entitled to trained legal assistance so their rights may be fully protected," *Johns*, 114 F.3d at 877 (citation omitted), upon recognizing that New York counsel was in no position to provide effective assistance, as he must have, the IJ had the obligation to suspend the hearing and give Lin a new opportunity to retain competent counsel or *sua sponte* take steps to procure competent counsel to represent Lin. *See id.*

What happened here instead was at best a simulation of justice in which counsel went through the motions of representing Lin and the IJ accepted that a fair hearing was had. To have counsel represent Lin under these conditions not only invited ineffective assistance of counsel, it flirted with denial of counsel altogether. "It remains unsettled in this circuit whether a showing of prejudice must be made where the right to counsel has effectively been denied a respondent in a deportation hearing." *United States v. Ahumada–Aguilar*, 295 F.3d 943, 950 (9th Cir.2002) (citations omitted). Because we do find prejudice, we need not reach this issue.

We understand and appreciate that the IJ may have hoped that due process might somehow be served in such a situation, and—we don't know the content of their off-the-record conversation—may even have been assured by counsel that she could give what she would later say she thought was a weak case all the effort it deserved. But someone dropped the ball here: An arrangement to proceed in determining the fate of a minor—who did not speak English and did not understand the

process unfolding around him—resulted in a denial of due process.

 It was fortuitous indeed that Lin was able to obtain pro bono counsel in time to stay his removal to China one day before it was scheduled. We emphasize here that *Rios–Berrios* applies even in what may appear to be a "weak" case: The due process right to effective assistance of retained counsel in the full and fair presentation of an asylum claim must not be vitiated. This is *especially* so when the applicant is a minor. Immigration judges must refuse to allow a hearing to go forward if a minor's counsel is obviously unprepared. Absent a minor's knowing, intelligent, and voluntary waiver of the right to counsel, the IJ may have to take an affirmative role in securing representation by competent counsel.

Counsel's ineffective assistance at the hearing denied Lin a full and fair opportunity to present his case before the IJ, and thus violated his Fifth Amendment right to due process. The BIA's conclusion that counsel's ineffective assistance was not prejudicial is error, predicated in part on its abuse of discretion in not giving due consideration to the expanded record on appeal, and in part on its misreading of 8 U.S.C. § 1101(a)(42). In denying Lin's motion to reopen, the BIA abused its discretion.

## IV. *CONCLUSION*

In refusing to reopen Lin's claim, based on its evident refusal to consider the expanded record, its misreading of the governing statute, and its toleration of the sham hearing, the BIA acted contrary to law and thereby abused its discretion. The BIA must consider the expanded record that has been prepared by Lin's new,

competent counsel. We grant the petition to reopen.

## PETITION GRANTED.