**NOT FOR PUBLICATION**



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JIANHUA ZHAO,<br><br>            Petitioner,<br><br>  v.<br><br>MERRICK B. GARLAND, Attorney<br>General,<br><br>            Respondent. | No. 22-1091<br><br>Agency No.<br>A087-801-882<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 14, 2023
Pasadena, California

Before: TASHIMA, WALLACH[**], and CHRISTEN, Circuit Judges.
Dissent by Judge TASHIMA

     Jianhua Zhao, a native and citizen of China, petitions for review of the Board

of Immigration Appeals' (BIA) ruling affirming the denial of her claims for asylum,

withholding of removal, and relief under the Convention Against Torture.  The BIA

---

    [*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

    [**]     The Honorable Evan J. Wallach, United States Senior Circuit Judge for the Federal Circuit, sitting by designation.

affirmed the Immigration Judge's (IJ) finding that Zhao was not credible and the IJ's conclusion that Zhao did not demonstrate ineffective assistance of counsel. We have jurisdiction under 8 U.S.C. § 1252. "Questions of law, including ineffective assistance of counsel claims, are reviewed de novo." *Ahmed v. Mukasey*, 548 F.3d 768, 771 (9th Cir. 2008). "We review factual findings, including adverse credibility determinations, for substantial evidence." *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014). We grant the petition for review and remand for further proceedings.

1. The BIA relied on six of the grounds the IJ cited in support of its adverse credibility determination. Three of those grounds were alleged inconsistencies or implausibilities: (1) why authorities forced Zhao to get a new IUD after her second child was born in secret; (2) why authorities gave Zhao an injection to begin an induced-labor abortion without first conducting a pregnancy test; and (3) why authorities told Zhao, after they discovered her second child, that she needed an IUD or sterilization when she still had an IUD in place. While the IJ failed to notify Zhao of these perceived inconsistencies or "provide [her] with an opportunity to explain each inconsistency" during the initial proceedings, *Barseghyan v. Garland*, 39 F.4th 1138, 1143 (9th Cir. 2022), Zhao had notice and an opportunity to respond to these inconsistencies on remand from the BIA. Zhao provided a letter from her husband on remand that addressed the first and second of these issues. The first and second inconsistencies do not support the adverse credibility ruling because the BIA "must

2

consider 'other record evidence that sheds light on whether there is in fact an inconsistency' in a petitioner's explanation," *Munyuh v. Garland*, 11 F.4th 750, 763 (9th Cir. 2021) (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1044 (9th Cir. 2010)), and there is no indication the BIA considered the letter from Zhao's husband. With respect to the third inconsistency, there is nothing in the record to suggest that anyone—including Zhao—would have had reason to suspect the IUD had remained in place through the induced labor abortion. Because "no deference is due to inference[s] drawn from facts which are uncertain or speculative," *De Leon v. Garland*, 51 F.4th 992, 999 (9th Cir. 2022) (quotation omitted), this inconsistency does not support the adverse credibility ruling. *See also Ge v. Ashcroft*, 367 F.3d 1121, 1125 (9th Cir. 2004) (overturning adverse credibility findings "based on the IJ's personal conjecture about what Chinese authorities would or would not do").

The fourth ground cited by the BIA was the IJ's assessment that Zhao "fail[ed] to provide or adequately explain the absence of reasonably available evidence" that an IUD could remain in place through an induced-labor abortion. This fourth ground does not support the adverse credibility ruling because the BIA ignored the portion of Dr. Tsai's letter that concluded Zhao's account of the IUD remaining in place through induced labor was plausible. *Id.* We note that Dr. Tsai's letter was unrebutted.

The two remaining grounds supporting the BIA's adverse credibility

3

determination do not suffer from these errors, but may be attributable to Zhao's lawyer's deficient performance. The IJ requested two types of medical evidence for Zhao's continued hearing: proof that Zhao was the patient who had undergone the ultrasound she had submitted into evidence, and evidence that an IUD could remain in place through induced labor. The BIA relied on the IJ's observation at the continued hearing that there was a long pause before Zhao answered a question about why she had failed to produce the requested medical evidence showing that an IUD could have remained in place through her induced labor abortion. The IJ also concluded that Zhao was inconsistent about whether she understood the IJ's request for the evidence. The BIA reasoned that Zhao was present when the IJ told her lawyer that additional evidence was needed to show an IUD could have remained in place, and that the IJ wrote a note on the hearing notice that described the requested evidence. This reasoning is inadequate support because Zhao is not an English speaker, she required an interpreter, and the record does not show that she could have read the IJ's handwritten notation or that the IJ's attempts to convey the need for the specific additional evidence were otherwise communicated or translated to Zhao. On the one occasion the IJ spoke directly to Zhao about needing evidence to show that the IUD could remain in place, the instruction was sandwiched between two other instructions, and the IJ asked Zhao to confirm her comprehension of only the final instruction: "You have to come back that day, do you understand?" The

4

later long pause that the BIA relied on is consistent with Zhao's explanation that she thought she had satisfied the IJ's request because she brought evidence to the continued hearing showing she had submitted to an ultrasound, as the IJ requested. For reasons explained below, we conclude that Zhao's counsel's performance fell below an objectively reasonable standard and that counsel's deficient performance may have contributed to the two remaining grounds cited to support the credibility ruling.

2. Zhao has satisfied the procedural requirements to bring an ineffective assistance of counsel claim. *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988). As for counsel's performance, the IJ repeatedly stated that the evidence regarding the medical plausibility of Zhao's claim was needed and emphasized its importance. Zhao established that counsel performed deficiently because counsel did not obtain the needed evidence himself, and there is no indication he translated the oral request or the IJ's handwritten instructions into Chinese so Zhao could read them and obtain the requested evidence. *See Iturribarria v. INS*, 321 F.3d 889, 901 (9th Cir. 2003) (holding that a petitioner "cannot be precluded from demonstrating ineffective assistance of counsel because he reasonably relied upon and assumed his counsel's competence").

Zhao was required to show only that her claim "may" have been prejudiced by counsel's deficient performance. *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir.

5

1999). To assess prejudice, we must "come to a tentative conclusion as to whether [petitioner]'s claim, if properly presented, would be viable," and the petitioner "only needs to show that [s]he has *plausible* grounds for relief." *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004) (citation omitted). The record makes plain that the primary basis for the IJ's adverse credibility ruling was the failure to produce the medical evidence the IJ requested; none of Zhao's claims could be established if her testimony was not credited. This is sufficient to establish that Zhao may have been prejudiced. If her testimony had been credited, it would have established per se persecution. *Wang v. Ashcroft*, 341 F.3d 1015, 1020 (9th Cir. 2003) (holding that "forced abortions are per se persecution" under 8 U.S.C. § 1101(a)(42)).

Given the interrelated nature of the credibility and IAC issues, we remand for the BIA to reconsider its credibility determination. The BIA shall reevaluate whether the totality of the circumstances sufficiently supports the adverse credibility determination if Dr. Tsai's complete letter and the letter from Zhao's husband are considered. The totality of the circumstances also includes the extent to which the remaining two grounds cited in support of the adverse credibility determination were influenced by counsel's deficient performance. *See INS v. Ventura*, 537 U.S. 12, 16–17 (2002). If Zhao's testimony is deemed credible on remand, the agency shall reconsider whether Zhao was prejudiced by counsel's deficient performance.

**PETITION FOR REVIEW GRANTED and REMANDED.**

*Zhao v. Garland*, No. 22-1091

TASHIMA, Circuit Judge, dissenting:

I believe that Petitioner failed to establish prejudice to support her ineffective assistance of counsel claim because the IJ told her directly of the need for her to provide the requested letter. I further believe that the majority incorrectly applies our standard of review and does not acknowledge the BIA's standard in reviewing the IJ's findings. For these reasons, I respectfully dissent.

1. "To establish ineffective assistance of counsel in immigration proceedings in violation of the right to due process, a petitioner must show (1) that 'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting [her] case,' and (2) prejudice." *United States v. Lopez-Chavez*, 757 F.3d 1033, 1041 (9th Cir. 2014) (quoting *Lin v. Ashcroft*, 377 F.3d 1014, 1023 (9th Cir. 2004)).

The majority concludes that Petitioner established ineffective assistance "because counsel did not obtain the needed evidence himself, and there is no indication he translated the oral request or the IJ's handwritten instructions into Chinese so Zhao could read them and obtain the requested evidence." However, the majority disregards that part of the record which establishes that the IJ told Petitioner herself, through an interpreter, of the need for the letter. Speaking directly to Petitioner, the IJ said:

> You don't necessarily have to go see a doctor for this but I would like an opinion letter from a doctor, a reliable doctor as to whether it is possible to do an abortion by induced labor with an IUD in place and not remove the IUD. We're not medical doctors here so we don't know but it seems difficult.

The IJ then asked Petitioner if she understood, and she stated that she did. Thus, even if counsel failed to tell Petitioner about the need for the letter, Petitioner cannot establish that she was prejudiced by this alleged failure because the IJ told her directly that she needed to obtain the letter and Petitioner acknowledged directly to the IJ that she understood.

The majority's reasoning that counsel was deficient for failing to translate the oral request is puzzling because the proceedings were interpreted into Mandarin by an official interpreter. Similarly puzzling is the majority's reasoning that the BIA's conclusion is unsupported because "Zhao is not an English speaker, she required an interpreter, and the record does not show that she could have read the IJ's handwritten notation or that the IJ's attempts to convey the need for the specific additional evidence were otherwise communicated or translated to Zhao." The majority again fails to acknowledge that the IJ told Zhao directly, through an interpreter, exactly what evidence was required: "an opinion letter from a doctor, a reliable doctor as to whether it is possible to do an abortion by induced labor with an IUD in place and not remove the IUD." Counsel's purported failure to translate

2

a written note instructing Zhao of the same thing cannot establish prejudice because the IJ already told Zhao of the requirement, and Zhao indicated that she understood. The majority's statement that "the record does not show . . . that the IJ's attempts to convey the need for the specific additional evidence were otherwise communicated or translated to Zhao" is simply mistaken; it ignores the fact that the proceedings were translated into Mandarin for Zhao.

In addition, the majority errs in stating that "the BIA ignored the portion of Dr. Tsai's letter that concluded Zhao's account of the IUD remaining in place through induced labor was plausible." To the contrary, the BIA did not ignore that portion of the letter. The BIA stated that it "agree[d] with the [IJ's] evaluation of [Zhao's] corroborative evidence, which does not sufficiently rehabilitate her discredited testimony or independently satisfy her burden of proof." In agreeing with the IJ's evaluation of the letter, the Board cited to the IJ's decision, where the IJ did address that portion of the letter. The IJ addressed the letter thoroughly, stating:

> The evidence does not show that it is possible to perform an induced abortion without removing an IUD at five to six months. The evidence only cites a single example of where an IUD remained in place following a miscarriage at eight weeks. Eight weeks is not even two months. Thus, the pregnancy is far less developed than a five to six month old fetus.

3

The IJ's conclusion is supported by substantial evidence because this is precisely what Dr. Tsai's letter states: although it is "well known" that "an IUD may fail and result in pregnancy," there is "less medical data regarding an IUD remaining within the uterus after a pregnancy has terminated," and citing one case "in which the IUD remained within the uterus after a miscarriage at 8 weeks." The BIA did not ignore the relevant portion of Dr. Tsai's letter, but instead, agreed with the IJ that the letter was insufficient to rehabilitate the testimony the IJ found not credible – that an IUD could remain in place after an abortion at five or six months.

"We find prejudice 'when the performance of counsel was so inadequate that it may have affected the outcome of the proceedings.'" *Lopez-Chavez*, 757 F.3d at 1043 (quoting *Correa–Rivera v. Holder*, 706 F.3d 1128, 1133 (9th Cir. 2013)). Because the IJ told Petitioner that she needed to obtain the letter, counsel's alleged failure to tell her to obtain the letter could not have, and did not, affect the proceedings. Contrary to the majority's conclusion that "counsel performed deficiently because counsel did not obtain the needed evidence,"[1] it was Petitioner's responsibility to obtain the evidence.

---

[1] Of course, there is no basis in the record from which to conclude that counsel's (or Petitioner's) failure to "obtain the needed evidence" was from lack of trying. The failure could have been because no reputable, qualified physician would offer such an opinion, and admission of that fact would have been fatal to Petitioner's case.

2.      I also disagree with the majority's review of the adverse credibility determination because it does not take into account the proper standard of review. The majority implies that the Board made the factual findings in support of the adverse credibility determination.  However, as the Board stated, it reviews the IJ's factual determinations, including credibility findings, for clear error.  *See* 8 C.F.R. § 1003.1(d)(3)(i) ("The Board will not engage in de novo review of findings of fact determined by an immigration judge.  Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.").  We, in turn, review the agency's factual determinations for substantial evidence, which means "[w]e may only reverse the agency's determination where 'the evidence compels a contrary conclusion from that adopted by the BIA.'"  *Garcia v. Wilkinson*, 988 F.3d 1136, 1142 (9th Cir. 2021) (quoting *Afriyie v. Holder*, 613 F.3d 924, 931 (9th Cir. 2010)).  Thus, we review for substantial evidence the Board's determination that the IJ did not commit clear error in making his credibility findings.

The deferential standard of review is significant here because, as Petitioner acknowledges in her opening brief, the "seminal issue" was the IJ's request for a letter stating that it is possible to have an abortion at five months without removing

the IUD. The IJ relied not only on Petitioner's failure to provide the letter, but also on her explanation for the failure, finding her not credible when she asserted that she did not know she needed to submit the letter.

•  ●  •

Given the lack of prejudice needed to establish Petitioner's ineffective assistance claim and under a proper application of the standard of review, I would deny the petition. I respectfully dissent.