Emmanuel MEJIA, Petitioner,

v.

John ASHCROFT, Attorney General, Respondent.

No. 00–71638.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2002.

Filed Aug. 2, 2002.

Michael P. Karr, Sacramento, California, for the petitioner.

Julia K. Doig and Anthony C. Payne, United States Department of Justice, Office of Immigration Litigation, Washington, D.C., for the respondent.

Before THOMPSON, W. FLETCHER and BERZON, Circuit Judges.

## OPINION

BERZON, Circuit Judge.

Emmanuel Mejia, a native of the Phillippines, petitions for review of the Board of Immigration Appeals' (BIA) decision denying his motion to reopen his asylum proceedings. We grant the petition and direct the BIA to reopen the proceedings.

## BACKGROUND

Emmanuel Mejia left the Philippines for the United States in May 1992, afraid for

his life. The following account of his experience in the Philippines comes from the factual findings in a 1994 decision by an Immigration Judge (IJ), who "afford[ed]" Mejia's testimony "full weight as evidence" because he found it "candid," "forth-right," and "credible."

In the Philippines, Mejia operated an auto repair business. A military base sat one kilometer from his auto shop and many of Mejia's customers were high-ranking military officers. In April, 1991, a man named Ramon Carmon came to his shop and began asking about the whereabouts and activities of Mejia's military customers. Mejia did not supply the requested information.

Carmon returned five days later and asked similar questions. Mejia similarly refused to respond. In a visit one week later, Carmon revealed that he belonged to the New People's Army (NPA), a violent rebel group opposed to the Philippine government. Carmon requested one quarter of Mejia's monthly income as a "revolutionary tax," but Mejia refused to pay, explaining that he could not afford to. Carmon retorted that he had observed how busy Mejia's shop was and that Mejia had a lot of income.

Mejia then confided in his childhood friend, Iggie Salazar, whom Mejia knew was a drug salesman for the NPA, and in his customer and friend Colonel Costudio, a member of the Philippine intelligence. Costudio had Mejia complete paper work designating Mejia a confidential informer for the military, a position that required no training and provided Mejia no remuneration.

Salazar later disclosed to Mejia the location of a NPA "safe-house," where the NPA kept drugs and conducted other illegal activities. Mejia relayed this information to Costudio. A military raid of the safe-house followed. Mejia identified the military members of the NPA who were arrested in the raid, and testified that he knew them because they had attended a party at his place.

Two weeks after Mejia's testimony, Costudio's assistant, Major Lumaweg, conducted a raid on another NPA stronghold. Mejia's name was on a "liquidation list" the military seized. Major Lumaweg then advised Mejia that the NPA wanted to assassinate him and that he should hide in the provinces. Thus warned, Mejia sequestered himself in his father's house in the province of Pangasinan. Soon after his arrival in Pangasinan, Mejia discovered that the NPA was active there as well. Feeling unsafe, he stayed for only one week and then traveled with his uncle, a soon-to-be naturalized United States citizen, to this country, arriving on May 6, 1992, on a five month visitor's visa.

Mejia filed for asylum on August 10, 1992, before his visa expired. The INS denied the application on May 19, 1993. Five days earlier, on May 14, 1993, the INS had issued an order for Mejia to show cause, alleging that Mejia was deportable. At an appearance before an IJ on September 2, 1993, Mejia conceded deportability and renewed his application for asylum.

The IJ denied this second asylum application one year later in an oral decision, but granted Mejia's alternative request for voluntary departure. Although the IJ, as noted above, fully credited Mejia's testimony, she ruled that Mejia failed to demonstrate eligibility for asylum.

Nearly six years after Mejia filed his appeal from the IJ decision, a divided BIA panel denied it on May 30, 2000. In dissent, chairman Schmidt stated that Mejia had demonstrated that he feared persecution on account of imputed political opinion and thus merited asylum relief. Following this denial, Mejia filed a motion to reopen

with the BIA, seeking to present new evidence. A divided BIA panel, chairman Schmidt again dissenting, denied this motion on November 15, 2000. Mejia petitions for review of this denial.

## JURISDICTION

The INS argues that this court lacks jurisdiction to consider Mejia's petition for review. If the INS was correct that Mejia was attempting to petition for review from the BIA's May 30, 2000, denial of his appeal, its jurisdictional argument would have merit, as the petition to this court would be much too late. But Mejia instead seeks review of the BIA's November 15, 2000, order denying his motion to reopen. The opening page of Mejia's opening brief states that Mejia seeks review of the BIA order issued on November 15, 2000, and this statement is followed by a citation to the part of the record that contains the November 15 order.

Mejia petitioned for review of the November 15 order denying his motion to reopen on December 14, 2000. According to the applicable transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") and our case law, the petition was timely and this court has jurisdiction to review it. IIRIRA § 309(a), (c)(1); *Socop–Gonzalez v. INS*, 272 F.3d 1176, 1183 (9th Cir.2001) (en banc).

## ANALYSIS

### I. STANDARD OF REVIEW

 Denials of motions to reopen are reviewed for an abuse of discretion, although *de novo* review applies to the BIA's determination of purely legal questions. *See Rodriguez–Lariz v. INS*, 282 F.3d 1218, 1222 (9th Cir.2002). Because Mejia argues for *de novo* review, the INS maintains that Mejia has waived review of the denial of his motion to reopen for abuse of discretion.

 Despite his citation of an incorrect standard of review, Mejia has presented several arguments that demonstrate how the BIA abused its discretion in denying Mejia's motion to reopen. A failure to recite the proper standard of review does not constitute waiver of a properly raised merits issue. The cases cited by the INS are not to the contrary. Instead, they provide support for the unremarkable principle that the failure to argue an issue in an opening brief constitutes waiver.

In the first case relied upon by the INS, *Martinez–Serrano v. INS*, 94 F.3d 1256, 1259–60 (9th Cir.1996), this court decided that when an appellant fails to argue that the BIA's order denying his motion to reopen was incorrect, the appellant has waived review of that order. In that case, the BIA had denied Martinez–Serrano's motion to reopen because Martinez–Serrano made arguments that would apply only if he was charged with deportability as a smuggler, when in fact he was charged with entering without inspection. *Id.* at 1257. This court held that Martinez Serrano had waived any challenge to this decision because he did not address the grounds for the BIA's denial of his motion to reopen in the argument section of his brief and instead addressed two entirely different issues. *Id.* at 1260. In the current case, however, the argument section of Mejia's opening brief directly addresses the basis of the BIA's decision denying his motion to reopen: The BIA's November 15 decision held that Mejia did not establish prima facie eligibility for asylum because he did not have a well-founded fear of persecution on account of a ground that entitles him to relief; Mejia's opening brief argues for nine pages that he was eligible for asylum because he feared persecution

on account of a ground that entitles him to relief.

The other cases cited by the INS, *Bazuaye v. INS*, 79 F.3d 118, 120 (9th Cir. 1996), and *Aluminum Co. of America v. Administrator, Bonneville Power Admin.*, 175 F.3d 1156, 1163 n. 8 (9th Cir.1999), merely stand for the proposition that an appellant has waived an argument if she raises it for the first time in her reply brief. As stated above, Mejia makes several arguments challenging the BIA's November 15 order in his opening brief.

The INS further supports its waiver argument with the claim that Mejia's opening brief discusses only the BIA's May 30, 2002, denial of his asylum application. The analysis section of Mejia's brief, however, which is devoted either to refuting arguments that the BIA made in its November 15 order denying Mejia's motion to reopen or to emphasizing arguments that Mejia made in his motion that the BIA inexplicably did not address in its November 15 order. Mejia does refer to the BIA's May 30 decision in making his arguments. But such reference is entirely appropriate, since the BIA explicitly relied on reasoning contained in its May 30 decision when it issued its terse November 15 order denying Mejia's motion to reopen.

We conclude that the INS' waiver arguments—like its jurisdictional argument discussed above—are entirely lacking in merit.

## II. ABUSE OF DISCRETION

■ The BIA denied Mejia's motion to reopen proceedings, ruling that Mejia had not shown that he is prima facie eligible for asylum or withholding of deportation. A person is prima facie eligible for asylum if he can show that he is a refugee. 8 U.S.C. § 1158(b)(1). A refugee is defined as someone "who is unable or unwilling to return to, and is unable or unwilling to

avail himself . . . of the protection of, [his ] country because of . . . a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). A person has a well-founded fear of persecution on account of political opinion if his fear is on account of an imputed political opinion, i.e. a political opinion that he does not necessarily hold but that his persecutors believes that he holds. *Lim v. INS*, 224 F.3d 929, 934 (9th Cir.2000).

■ As stated above, we review *de novo* the BIA's determination of purely legal issues. Our precedent involving facts nearly identical to those presented in the current case demonstrates that, contrary to the BIA's conclusion, Mejia is prima facie eligible for asylum.

The year before the BIA denied Mejia's motion to reopen, an en banc panel of this court considered the case of a person who acted as a confidential informer against the NPA. The en banc court held that a person "who sided with the Philippine military in a conflict that was political at its core certainly would be perceived as a political act by the group informed upon." *Briones v. INS*, 175 F.3d 727, 729 (9th Cir.1999) (en banc). Such a person has a well-founded fear of persecution because the NPA is "capable of killing its opponents," and if it will "kill business people who do not contribute to their cause, it takes little imagination to understand what they would do to a successful informer for the Philippine military." *Id.* As a result, if an informer against the NPA appears on a NPA hit list, he has a well-founded fear of persecution based on imputed political opinion and is eligible for asylum. *Id; see also Lim*, 224 F.3d at 933 (retaliation by NPA against informer is on account of imputed political opinion); *cf. Borja v.*

*INS*, 175 F.3d 732, 736 (refusal to pay NPA revolutionary tax in the face of threats constitutes an expression of political belief).

▌ Mejia's unchallenged testimony demonstrated that he appeared on a NPA hit list after acting as an informer against the NPA. Under our precedents, these facts establish eligibility for asylum. The BIA therefore committed legal error when it held that Mejia was not prima facie eligible for asylum. The BIA does not have the discretion to misapply the law, and it abuses its discretion when it does. *Valderrama v. INS*, 260 F.3d 1083, 1087 n. 4 (9th Cir.2001).

▌ Even if the BIA had not made this legal error, its treatment of Mejia's claim nonetheless exhibited an abuse of discretion. As he did in his initial appeal to the BIA, Mejia argued in his motion to reopen that he has a well-founded fear of persecution on account of a political opinion imputed to him by his persecutors. In denying his motion, the BIA neither addressed this argument nor gave any explanation for why it did not.

When Mejia first appealed the IJ's ruling to the BIA, the BIA did not decide whether Mejia feared persecution on account of an imputed political opinion. Instead, nearly six years after Mejia filed his appeal, the BIA in its opinion reasoned that Mejia did not fear harm based on "any immutable characteristic or belief that he had." This analysis concerning the bases for Mejia's fears entirely neglected to consider fear of harm based on an *imputed* political opinion. An imputed political opinion is not an immutable character-istic, nor is it necessarily a belief that Mejia actually entertained. Instead, an imputed opinion is an opinion an applicant for asylum was believed to harbor, even if he did not. *Sangha v. INS*, 103 F.3d 1482, 1489 (9th Cir.1997).

Later in its opinion, the BIA did directly touch upon the imputed opinion issue but again did not actually decide it. The opinion stated that "even if the NPA imputed a political opinion to [Mejia] which was adverse to the NPA, we have held that an asylum applicant has the burden of establishing that the government of his country is unable or unwilling to protect him from persecution." The BIA then stated that Mejia did not present any evidence that the Philippines could not protect him or that the threat from the NPA existed nationwide. Based on that assessment of the evidence, the BIA held that Mejia did not qualify for asylum, once more without expressing any view regarding whether Mejia was persecuted on the basis of an imputed political opinion.

After the BIA issued its May 30 opinion, Mejia filed a timely motion to reopen, requesting the BIA to consider "new evidence which addresses the precise points on which the [BIA] relied to deny his request for asylum." The evidence included approximately 65 pages of news articles chronicling the Philippine government's violent and geographically widespread struggle with the NPA. This evidence was thus directed to precisely fill the evidentiary gaps the BIA had identified, concerning whether Mejia had not proven that the Philippines could not protect him or that the threat of persecution existed nation-wide.[1]

---

1. In its brief before this court the INS badly mischaracterizes the evidence submitted by Mejia and argues that it does not support his position. For example, the INS states that the evidence shows that the government's ef-forts against the NPA have proven "so successful that the group's membership on April 3, 2000, was only 10,600." In fact the passage cited by the INS states that "the NPA has

In the BIA's subsequent denial of Mejia's motion to reopen, the BIA did not discuss whether the new evidence adequately demonstrated that the Philippines could not protect Mejia or whether the threat of persecution existed nationwide. The BIA's opinion denying reopening instead explained that the evidence Mejia submitted did not show that Mejia's fear was on account of a reason that would make Mejia eligible for asylum:

> [The new evidence does] not change our view that [Mejia] does not have a well-founded fear of persecution on account of an enumerated ground. As we indicated in our prior decision, [Mejia] fears harm because of his participation in the military. His fear is not on account of any immutable characteristic or belief that he had.

Once more, the BIA inexplicably did not consider the crucial elements of Mejia's claim that he qualified for asylum. Taking a shell-game like approach, the BIA neither considered whether Mejia had a well-founded fear of persecution on account of imputed opinion nor considered the new evidence regarding the broad scope and unlikely containment of the NPA threat.

The BIA's statement that its view had not changed regarding whether Mejia had shown persecution does not shed any light on whether the BIA believed that Mejia had shown persecution on the basis of imputed opinion, because it had never expressed a view on that subject in the past. Further, in explaining why Mejia did not meet the "on account of" requirement, the BIA denial of the motion to reopen repeats the earlier, limited conclusion that "[h]is fear is not on account of any immutable characteristic or belief that *he had.*" (emphasis added). In short, the BIA yet again avoided directly deciding whether Mejia's fear was on account of a political opinion imputed to him by the NPA.

At the same time, the BIA's denial also did not address whether the evidence submitted by Mejia with his motion to reopen demonstrated that his government is unable to protect him or that the threat from the NPA exists nationwide. The only statement the denial makes regarding the content of the evidence is that it describes "various accounts of violence in the Philippines caused by the New People's Army (NPA)." This statement does not evince any sort of conclusion about the geographic range of this violence or about the Philippine government's ability to control it. So the BIA refused to make a factual finding regarding evidence that it had earlier stated was a crucial requirement.

■ The BIA abuses its discretion if it acts "arbitrarily, irrationally, or contrary to law." *Valderrama,* 260 F.3d at 1087 n. 4 (quoting *Israel v. INS,* 785 F.2d 738, 740 (9th Cir.1986)). For example, when the BIA is required to balance equities according to a prescribed set of factors, it "abuses its discretion when it 'fails to state its reasons and show proper consideration of all factors ....'" *Rodriguez–Lariz,* 282 F.3d at 1227 (quoting *Watkins v. INS,* 63 F.3d 844, 849 (9th Cir.1995)); *Kamalthas v. INS,* 251 F.3d 1279, 1284 (9th Cir.2001). This case is simpler, as it did not present the BIA with the task of considering factors or weighing equities. Instead, the BIA was charged with the entirely straightforward task of considering Mejia's argument before it, i.e., whether Mejia feared future persecution on the basis of imputed political opinion. The BIA did not even "purport[ ] to engage in any substantive analysis" of this issue, although Mejia clearly presented it to the BIA and provided with his motion to re-

10,600 members ... *up* by 18.5 percent from July 1998."

open evidence going to the question the BIA had indicated needed to be answered before it would address the imputed political opinion issue. *Rodriguez–Lariz*, 282 F.3d at 1227. As a result of this shifting reasoning, the BIA acted arbitrarily and irrationally and thereby abused its discretion in denying Mejia's motion to reopen.

## CONCLUSION

Although the INS attempts to avoid the merits in this case through the use of jurisdiction and waiver arguments, these arguments fail. On the merits, the BIA held, in violation of settled law, that Mejia was not prima facie eligible for asylum. In addition, it inexplicably did not address Mejia's newly submitted evidence concerning whether his fear of future persecution is well-founded. For both these reasons, the BIA abused its discretion by denying Mejia's motion to reopen. Mejia's petition to review the BIA's denial of his motion to reopen is GRANTED and this case is RE-MANDED for further proceedings.