[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 1, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16170
Non-Argument Calendar

_____

BIA Nos. A79-101-924 & A79-101-925

LUIS ANTONIO MENDOZA-AVELLA,
ZULMAN ANDREA MENDOZA-TORRES,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(August 1, 2007)

Before ANDERSON, BIRCH and BARKETT, Circuit Judges.

PER CURIAM:

Luis Mendoza-Avella ("Luis") and Zulman Mendoza-Torres ("Zulman") (collectively, "the Mendozas") petition for review of the Board of Immigration Appeals ("BIA")'s order denying their motion to reopen its previous order, which adopted and affirmed the Immigration Judge's ("IJ's") final removal order. They argue that the BIA abused its discretion in concluding that the new evidence did not alter the adverse credibility determination that the IJ made in denying their applications for withholding of removal. They contend that the new evidence directly addresses their credibility and should not have been dismissed without analysis or discussion about the evidence's materiality. We AFFIRM.

## I. BACKGROUND

Luis and his daughter, Zulman, both natives of Colombia, entered the United States without valid entry documents in March 2001. Accordingly, the Department of Homeland Security served the Mendozas with Notices to Appear (NTAs), charging them with inadmissibility under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). At a hearing before the IJ, the petitioners admitted the factual allegations contained in the NTAs and conceded removability. The Mendozas filed timely applications for asylum and withholding of removal, claiming persecution because of their Pentecostal-Christian religion. They also sought relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"). In their applications, the

2

Mendozas alleged that two members of the Revolutionary Armed Forces of Colombia ("FARC") had approached and threatened them, stating that if they did not stop preaching religion and speaking against the FARC, they would be assassinated. A few months later, the Mendozas alleged, the same two men had approached them and had threatened them with death.

At the removal hearing before the IJ, Luis testified that he had been ordained as a preacher of the gospel for the United Pentecostal Church in 1964. He testified that the FARC had first approached him and his daughter in December of 2000, when two members threatened them with death if they continued to preach the gospel. After this initial contact, the FARC had continued to harass the Mendozas by vandalizing their church, breaking into houses, flattening tires, making telephone calls, beating children, and pushing women. In February 2001, Luis testified, the same two FARC members had approached him, his daughter Zulman, and three relatives of his wife in a park, and, putting guns to his and his daughter's stomachs, had told them that it would be the last warning because their family was on the list to be assassinated. He also testified that: (1) his other daughter, Sandra, who also was active in the church, was persecuted by the FARC, and had received asylum in the United States; (2) his wife still lived in Colombia, but, when the threats against Sandra began in July of 1999, she quit going to church and began moving to different parts of the country; and (3) he and Zulman, had decided to

3

seek asylum in the United States when they learned, en route to a conference in Costa Rica, that there would be a stopover in Miami. Zulman corroborated her father's accounts of the encounters with the FARC members.

The IJ denied the Mendozas' applications. After noting that the Mendozas had failed to submit evidence regarding Sandra's grant of asylum, the IJ found that their testimony was not credible, based on a number of inconsistencies between their testimonies and between their applications and testimony. The Mendozas appealed to the BIA, which adopted and affirmed the IJ's decision, finding that, while some of the inconsistencies noted by the IJ were immaterial, the failure of the Mendozas to mention in their asylum applications that they were threatened at gunpoint was a material inconsistency sufficient to support the IJ's adverse credibility determination. The BIA also found that, even if the Mendozas had been found credible, they had failed to establish that the threats of harm that they had received amounted to past persecution. In rejecting their claim that they would face persecution upon return to Colombia, the BIA noted that Luis's wife had continued to live in Colombia, and that the fear of general violence in Colombia is not a proper basis for a grant of asylum.

The Mendozas did not file a petition for review of the BIA's decision, instead filing a motion to reopen based on previously unavailable evidence. The motion included three sworn affidavits. In the first affidavit, Miguel Antonio

4

Jimenez Contreras, who is Luis's "political uncle," stated that: (1) in January 2006, he saw a series of pamphlets printed by the FARC bearing a picture of Luis, among others, and the caption "those against our ideas are eliminated;" and (2) in March of 2006, two men dressed in military uniforms approached his car outside of his house, asked if he had any information about Luis, and, when he answered no, threatened him with a gun and threatened to kill him if he did not have an answer the next time that they asked. AR at 14. In the second affidavit, Gilma Torres de Jimenez, a member of the Mendozas' church, stated that: (1) the Mendozas were forced to leave the country due to constant threats by the FARC; (2) in January 2006, she was thrown to the ground by an unknown man, who stated they were looking for "the Zulma [sic] and the snitch of her dad," and that Jimenez was to tell the Mendozas that the perpetrators were expecting "to give them lead;" and (3) the Mendozas' lives still were in danger because they were considered traitors. Id. at 20. In the final affidavit, Yulieth Alexandra Torres Lara, a friend of the Mendozas, stated that: (1) she had witnessed the many threats against the Mendozas; (2) in December 2005, three men had come to her house, inquired as to the Mendozas' whereabouts, and had threatened her; and (3) in February 2006 she had received a phone call by a member of the FARC, who stated that the FARC would kill the Mendozas. Citing a case from the Ninth Circuit, Mejia v. Ashcroft, 298 F 3d. 873

(9th Cir. 2002), the Mendozas argued that the statements established prima facie eligibility for relief, requiring the BIA to address the new evidence.

The BIA denied the Mendozas' motion to reopen, finding that they had not raised any error in the BIA's previous decision, and that their "underlying religious persecution claim ha[d] not changed in any material respect." Id. at 2. The BIA noted that this was not a case where a prior, meritless claim and adverse credibility finding were overcome by subsequent events, concluding that "the proffered additional evidence would not meaningfully affect the findings regarding their failure to demonstrate eligibility" for relief. Id. n.1.

## II. DISCUSSION

On appeal, the Mendozas argue that the BIA abused its discretion in concluding that the new evidence submitted with their motion to reopen did not alter the adverse credibility determination. They argue that the affidavits directly address their credibility and should not have been dismissed without any analysis or discussion about the evidence's materiality. The Mendozas cite Mejia for the proposition that the BIA was required "to engage in [] substantial analysis" of their claim. Appellant Br. at 15 (citing 298 F 3d. 873).

We review the BIA's denial of a motion to reopen for an abuse of discretion. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1302 (11th Cir. 2001) (citations omitted) ("[W]e employ a very deferential abuse of discretion standard in reviewing the

6

BIA's decision on a motion to reopen."). The Supreme Court has analogized the burden on an applicant seeking to reopen immigration proceedings to that imposed on a criminal defendant seeking a new trial "on the basis of newly discovered evidence, as to which courts have uniformly held that the moving party bears a heavy burden." INS v. Abudu, 485 U.S. 94, 110, 108 S. Ct. 904, 914 (1988) (citation omitted). "The implication of this analogy . . . and the fact that the regulations 'plainly disfavor' motions to reopen all support the BIA's imposition of a 'heavy burden.'" Al Najjar, 257 F.3d at 1302 (citation omitted). We have adopted the requirement that a movant must "present[ ] evidence of such a nature that the [BIA] is satisfied that if proceedings before the [IJ] were reopened, with all attendant delays, the new evidence offered would likely change the result in the case." Ali v. U.S. Att'y Gen., 443 F.3d 804, 813 (11th Cir. 2006) (citations and internal quotations omitted).

"At a minimum, there are at least three independent grounds upon which the BIA may deny a motion to reopen: 1) failure to establish a prima facie case; 2) failure to introduce evidence that was material and previously unavailable; and 3) a determination that despite the alien's statutory eligibility for relief, he or she is not entitled to a favorable exercise of discretion." Al Najjar, 257 F.3d at 1302 (citation omitted). Under 8 C.F.R. § 1003.2(c)(1), "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is

7

material and was not available and could not have been discovered or presented at the former hearing." In explaining 8 C.F.R. § 1003.2(c)(1), we have stated that:

> [t]he provision is framed negatively, by directing the Board not to reopen unless certain showings are made. It does not affirmatively require the Board to reopen the proceedings under any particular condition. Thus, the regulations may be construed to provide the Board with discretion in determining under what circumstances proceedings should be reopened.

Al Najjar, 257 F.3d at 1301 (alterations, citations, and internal quotations omitted). Moreover, as the Fifth Circuit has persuasively held, in any decision the BIA "has no duty to write an exegesis on every contention. What is required is merely that it consider the issues raised, and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Osuchukwu v. INS, 744 F.2d 1136, 1142-1143 (5th Cir. 1984).

Upon review of the record, and upon consideration of the briefs of the parties, we cannot say that the BIA abused its discretion in denying the Mendozas' motion to reopen. The Mendozas did not challenge the BIA's findings of adverse credibility and ineligibility for removal relief, instead filing a motion to reopen on the basis of previously unavailable evidence. While some of the evidence may have been previously unavailable–because it documented alleged threats occurring after the removal proceedings–the BIA properly found that it was not evidence sufficient to alter materially the BIA's initial determination of eligibility.

8

According to their testimony, the Mendozas already had been threatened directly and indirectly multiple times, one of which was at gunpoint. The incidents described in the affidavits represent a continuation of, and do not differ substantially from, the earlier threats, which the BIA determined did not rise to the level of persecution. Therefore, the Mendozas have not satisfied their heavy burden in demonstrating that the affidavits likely would change the outcome of their case, see Ali, 443 F.3d at 813, in part because the evidence does not sufficiently address the IJ's adverse credibility determination, as affirmed by the BIA. Moreover, and contrary to the Mendozas' assertion, the BIA considered the subsequently discovered evidence and explicitly found that it did not change the Mendozas' religious persecution claim in any material respect. Accordingly, the BIA did not abuse its discretion in denying the Mendozas' motion to reopen.

## III. CONCLUSION

Because the new evidence submitted did not materially differ from previously submitted evidence and did not demonstrate the Mendozas' eligibility for relief, the BIA did not abuse its discretion in denying their motion to reopen. Accordingly, we deny the petition for review.

**DENIED.**

9