**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA EDITH MORALES APOLINAR,
                          *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                          *Respondent.*

No. 04-73484

Agency No.
A75-706-903

MARIA EDITH MORALES APOLINAR,
                          *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                          *Respondent.*

No. 04-75248

Agency No.
A75-706-903

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 16, 2007—Pasadena, California

Filed January 24, 2008

Before: Harry Pregerson, Michael Daly Hawkins, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Pregerson

## COUNSEL

Maria Janossy, Glendale, California, for the petitioner.

Michael B. Mukasey, Attorney General; David M. McConnell, Deputy Director; Kurt B. Larson, Trial Attorney, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

PREGERSON, Circuit Judge:

Maria Edith Morales Apolinar ("Morales") petitions for review of two decisions of the Board of Immigration Appeals ("BIA"): one dismissing her appeal of an Immigration Judge's ("IJ") denial of cancellation of removal and rejecting her claim that James Robert Valinoti ("Valinoti")[1] provided ineffective assistance (No. 04-73484) and another denying her motion to reconsider its earlier decision (No. 04-75248). We have jurisdiction under 8 U.S.C. § 1252. We grant relief and remand for a merits hearing on Morales's cancellation of removal application.

### BACKGROUND

Morales is a twenty-eight year-old native and citizen of Mexico. She testified that she first entered the United States

---

[1]Notably, this is not the first time that we have addressed an ineffective assistance of counsel claim involving Valinoti and his law firm. *See, e.g., Baltazar-Alcazar v. INS*, 386 F.3d 940 (9th Cir. 2004); *Escobar-Grijalva v. INS*, 206 F.3d 1331 (9th Cir. 2000); *Hernadez Lucena v. Gonzales*, 215 F. App'x 627 (9th Cir. 2006).

in December 1986 without inspection and has not left since. She is the single mother of two native-born United States citizen children, Luis Angel Luna Morales, age eleven, and Karla Luna Morales, age nine. Neither child can read or write Spanish. Morales testified that her youngest child, Karla, has asthma and has undergone surgery for a neck tumor. She also testified that Karla takes medication four times a day and receives monthly medical visits. Morales and her children live with extended family members, including Morales's mother and grandparents. Morales began working as a babysitter in 1996 and as a self-employed housekeeper in 1999.

In 2000, Morales filed an application for asylum, which was denied. On July 17, 2000, she was charged with being an alien present in the United States without admission or parole, in violation of the Immigration and Nationality Act, Section 212(a)(6)(A)(i). On October 12, 2000, Morales was represented by then-attorney James Robert Valinoti at a master calendar hearing. She conceded the charge of removability, and the IJ found Morales removable to Mexico. Morales filed a cancellation of removal application on February 6, 2001. The IJ conducted an individual merits hearing on December 19, 2002.

At the conclusion of the hearing, the IJ denied Morales's application for cancellation of removal, after finding that Morales failed to establish two of the four requirements: (1) continuous physical presence for at least ten years preceding the application and (2) "exceptional and extremely unusual hardship" to a qualifying relative. *See* 8 U.S.C. § 1229b(b)(1)(A), (D).[2]

On appeal to the BIA, through newly retained counsel, Maria Janossy, Morales argued that her former attorney,

---

[2]The IJ concluded that Morales met the remaining requirements, namely that she was of good moral character and had not been convicted of any disqualifying criminal offenses. *See* 8 U.S.C. § 1229b(b)(1)(B)-(C).

Valinoti, provided ineffective assistance. She alleged Valinoti failed to proffer available witnesses and documents that would have established her continuous physical presence and failed to develop her hardship case. The BIA denied her petition on the ground that she failed to comply with the procedural requirements of *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), and then subsequently denied her motion to reconsider. Morales timely appealed.

## *STANDARD OF REVIEW*

"We review de novo claims of due process violations in deportation proceedings." *Cano-Merida v. INS*, 311 F.3d 960, 964 (9th Cir. 2002) (quoting *Perez-Lastor v. INS*, 208 F.3d 773, 777 (9th Cir. 2000)). We review the BIA's denial of a motion to reconsider for abuse of discretion, although "de novo review applies to the BIA's determination of purely legal questions." *Id.* (quoting *Mejia v. Ashcroft*, 298 F.3d 873, 876 (9th Cir. 2002)).

## *DISCUSSION*

## I. PROCEDURAL REQUIREMENTS FOR AN INEFFECTIVE ASSISTANCE CLAIM

The BIA abused its discretion when it dismissed Morales's ineffective assistance claim for failure to comply with the procedural requirements of *Lozada*.

[1] Under *Lozada*, the BIA generally requires a petitioner claiming ineffective assistance of counsel to: (1) submit an affidavit demonstrating and explaining her agreement with prior counsel regarding legal representation; (2) inform prior counsel of the accusations and allow counsel an opportunity to respond; and (3) indicate whether a complaint has been filed with the appropriate disciplinary authorities. *Id.* at 639.

[2] In practice, we have been flexible in our application of the *Lozada* requirements. The *Lozada* factors are not rigidly

applied, especially where their purpose is fully served by other means. *See, e.g.*, *Castillo-Perez v. INS*, 212 F.3d 518, 525-26 (9th Cir. 2000) (explaining that the *Lozada* requirements "are not sacrosanct"); *see also Ray v. Gonzales*, 439 F.3d 582, 588 (9th Cir. 2006) (observing that we have "not hesitated to address ineffective assistance of counsel claims, even when an alien fails to comply strictly with *Lozada*"). Indeed, "we seldom reject ineffective assistance of counsel claims *solely* on the basis of *Lozada* deficiencies." *Fong Yang Lo v. Ashcroft*, 341 F.3d 934, 937 n.4 (9th Cir. 2003).

We conclude that Morales substantially complied with the *Lozada* requirements. The attorney-client arrangement between Morales and Valinoti is evident from Valinoti's on-the-record appearances on her behalf.[3] Additionally, Morales submitted a sworn declaration explaining the conduct that substantiated her ineffective assistance claim. The declaration stated that: (1) Valinoti relied on Estela Rodriguez, a non-attorney immigration consultant, or *notario*, to perform the legal work; (2) Valinoti failed to submit available documents that would have supported her showing of continuous physical presence; (3) Valinoti failed to call witnesses who were able and willing to testify to her continuous physical presence; and (4) Valinoti failed to establish Morales's mother as a qualifying relative for hardship analysis purposes. Although Morales did not report Valinoti's misconduct to a disciplinary authority or confront Valinoti directly, as required under *Lozada*, we conclude that such action would have been futile under the circumstances.

Just twelve days after Morales's hearing before the IJ, Valinoti was suspended from the practice of law in the state

---

[3]Under 8 C.F.R. § 1003.17(a), an attorney must execute, file, and serve a Notice of Entry of Appearance on Form EOIR-28 before representing a client in any proceeding before an IJ. An attorney may withdraw from representation or effectuate substitutions of attorney only upon motion to the IJ. 8 C.F.R. § 1003.17(b).

of California for five years. In a 100-page decision, the California State Bar Court found that Valoniti had committed eighteen counts of misconduct in nine cases and five additional counts of uncharged but proven misconduct. *In re Valinoti*, No. 96-O-08095, 2002 WL 31907316 (Cal. Bar Ct. Dec. 31, 2002).[4] Valinoti subsequently resigned from the State Bar of California.

After the State Bar Court issued its decision, the Executive Office for Immigration Review petitioned for Valinoti's immediate suspension from practice before the BIA and Immigration Courts. The IJs were aware of Valinoti's underhanded practices for quite some time. *Valinoti*, 2002 WL 31907316, at *24 (explaining that Valinoti was "well-known" among IJs for repeatedly being late for hearings, or missing them altogether).[5] The Department of Homeland Security

---

[4]During the disciplinary hearings, the State Bar Court determined that Valinoti handled more than 2,720 immigration cases during a two-year period in a manner that was "reckless and involved gross carelessness," *id.* at *14, while earning more than $250,000 annually, *id.* at *9. The court found that Valinoti failed to competently represent clients, accepted more cases than he could handle, routinely "placed his interests above those of his clients" by permitting non-lawyers to perform legal work, and "consistently demonstrated a profound lack of understanding of his duty of fidelity to his clients." *Id.* at *14 (quoting hearing judge's findings of fact). The court also censured Valinoti for maintaining an excessive caseload with inadequate support staff, *id.* at *15-*17, moving his offices repeatedly without notifying his clients, *id.* at *17-*20, and failing to keep adequate records, *id.* at *20-*24.

[5]In November 1996, an exasperated IJ admonished an attorney from Valinoti's law office: "Mr. Valinoti knows he's overbooked. Most attorneys have maybe one or two hearings set. He has anywhere from six to ten set each morning or afternoon, and he's all over this courthouse. The result is his clients are not represented in court." *Id.* The IJ went on to characterize the pleading in the case before him as "one of the shoddiest" that he "had seen in a long time" and noted that "every case [Valinoti] has is a problem." *Id.* at *41. In that case, Valinoti's client, a sixty-eight year-old widow, was removed in absentia to Syria after her requests for relief were deemed abandoned due to Valinoti's ineffective assistance. *Id.* at

likewise petitioned for Valinoti's suspension from practice before that agency. Valinoti was required to file a timely answer to these allegations of misconduct, *see* 8 C.F.R. § 1003.105(c)(1), but he failed to do so. *In re Valinoti*, No. D2000-034, at 1 (BIA Oct. 8, 2003), *available at* http://www.usdoj.gov/eoir/profcond/FinalOrders/ValinottiJamesR-FnlOrd.pdf. His failure to respond constituted an admission of the allegations, *see* 8 C.F.R. § 1003.105(d)(1), and Valinoti was consequently suspended from practicing before the BIA, the Immigration Courts, and the Department of Homeland Security. *See In re Valinoti*, No. D2000-34, at 2.

**[3]** We conclude that, in cases where a petitioner's attorney has been suspended after failing to respond to prior charges of ineffective assistance, it would be futile for the petitioner to inform counsel of the accusations or file a complaint, and Morales's failure to do so therefore does not bar her ineffective assistance of counsel claim.

This decision comports with the policy goals of *Lozada*, which are "to provide a framework within which to assess the *bona fides* of the substantial number of ineffective assistance claims asserted, to discourage baseless allegations and meritless claims, and to hold attorneys to appropriate standards of performance." *Fong Lang Yo*, 341 F.3d at 937. Sadly, "the adjudication of [immigration] cases at the administrative level has fallen below the minimum standards of legal justice." *See*

---

*39-*42. That same month, another IJ complained that Valinoti's conduct was "taxing the system," *id.* at *32, before ordering his client removed in absentia to Mexico because of Valinoti's failure to abide by court-ordered deadlines, *id.* at *46. Again, in July 1997, while denying a request for a continuance, another IJ recognized that Valinoti had shown "complete irresponsibility in terms of what has been going on. This is not the first time that this has happened. This has happened before, within the last month, with Mr. Valinoti. I do not know what his problem is." *Id.* at *45. Valinoti's associate agreed with the IJ that Valinoti's conduct was "shameful." *Id.*

*Benslimane v. Gonzales*, 430 F.3d 828, 830 (7th Cir. 2005) (Posner, J.). All too often, vulnerable immigrants are preyed upon by unlicensed *notarios* and unscrupulous appearance attorneys who extract heavy fees in exchange for false promises and shoddy, ineffective representation. Despite widespread awareness of these abhorrent practices,[6] the lamentable exploitation of the immigrant population continues, and the BIA's insistence upon strict compliance with *Lozada* in cases where such compliance would clearly be futile only worsens the plight of the immigrant.

[4] Since it would have been futile for Morales to confront Valinoti and file a complaint, the BIA abused its discretion in dismissing Morales's claim of ineffective assistance of counsel for failure to strictly comply with *Lozada*.

II. PREJUDICIAL IMPACT OF VALINOTI'S DEFICIENT PERFORMANCE

[5] As an alternative ground for dismissing Morales's ineffective assistance of counsel claim, the BIA erroneously concluded that Morales's "former attorney's advice does not appear to have biased her claim." In the context of an ineffective assistance of counsel claim, prejudice is established when "the performance of counsel was so inadequate that it *may* have affected the outcome of the proceedings." *Munoz v. Ashcroft*, 339 F.3d 950, 955 (9th Cir. 2003) (citation omitted) (emphasis added). Morales "need not explain exactly what evidence [she] would have presented in support of [her] application." *Cano-Merida*, 311 F.3d at 965 (internal quotation marks omitted). Nor must Morales demonstrate conclusively

---

[6] *See, e.g.*, *Mendoza-Mazariegos v. Mukasey*, ___ F.3d ___, 2007 WL 4259510, at *10 n.4 (9th Cir. Dec. 6, 2007) ("The immigration system in this country is plagued with 'notarios' who prey on uneducated immigrants."); *H.B. 2659: Notorious Notaries — How Arizona is Curbing Notario Fraud in the Immigration Community*, 32 ARIZ. ST. L.J. 287, 292 (2000); *Unlawful Practice Hits Vulnerable Immigrants*, CAL. B.J. 1, 7 (Nov. 2001).

that she would win on her claims absent Valinoti's deficient performance. *See Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004). She need only show "*plausible* grounds for relief." *Id.* We conclude that Valinoti's deficient performance prejudiced Morales's ability to meet the requirements for cancellation of removal.

**[6]** Valinoti's deficient performance "prevented [Morales] from reasonably presenting her case" and so prejudiced her ability to establish continuous physical presence in the United States from June 1990 to the date of her application. *See* 8 U.S.C. § 1229b(b)(1)(A); *Iturribarria v. INS*, 321 F.3d 889, 899 (9th Cir. 2003). Valinoti failed to introduce available documentary evidence, including school records dating from 1988 to 1995, that would have supported Morales's showing of physical presence.[7] The IJ determined that Morales failed to meet the physical presence requirement largely due to her failure to present school records. "If she was attending school in this country," the IJ reasoned, "she could have obtained documents that would clearly indicate she was here, attending school."

Likewise, Valinoti failed to elicit testimony in support of Morales's physical presence. This evidence included testimony from Morales's relatives, some of whom were lawful residents, that Morales had lived in the United States with her family since 1988. The IJ discredited Morales's testimony because no witness corroborated her arrival date: "[I]t is very, very difficult for the Court to believe [Morales's] testimony that she was here as early as 1986, when not one of the per-

---

[7]The BIA's refusal to consider these documents, when submitted in a motion to supplement, was improper. The BIA incorrectly concluded the English-language documents did not comply with 8 C.F.R. § 1003.33 because they were not accompanied by a certification of translation. In fact, no certification of translation was necessary because the English-language documents were originals. As Morales explained, the school that issued the records provided *both* Spanish and English versions to Morales, which is why she submitted both sets of originals to the BIA.

sons that allegedly would have known of her entry into this country is willing to come to Court and testify on her behalf." Had Valinoti called the available relatives, their testimony would have been a factor considered by the IJ. *See Vera-Villegas v. INS*, 330 F.3d 1222, 1225 (9th Cir. 2003) ("[T]he time element of an alien's residency . . . may be shown by credible direct testimony or written declarations."); *see also Perez-Lastor*, 208 F.3d at 782 (drawing inference of prejudice despite lack of evidence as to the content of omitted testimony).

**[7]** Valinoti's deficient performance also prejudiced Morales's ability to meet the "exceptional and extremely unusual hardship" requirement for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1)(D). Morales had to show that a qualifying (i.e., citizen or legal permanent resident) relative — "her spouse, parent, or child" — would suffer hardship substantially beyond that which would ordinarily be expected to result from her removal *In re Monreal*, 23 I. & N. Dec. 56 (BIA 2001). Valinoti, who represented the entire Morales family throughout the course of Morales's removal proceedings, failed to establish Morales's mother as a qualifying relative for hardship analysis purposes. *Cf. Lara-Torres v. Ashcroft*, 383 F.3d 968, 974 (9th Cir. 2004) (concluding that ineffective assistance of counsel claims brought under the Fifth Amendment's fair hearing guarantee are limited to "legal services . . . rendered while proceedings were ongoing"). Any competent attorney would have recognized the strategic value of strengthening Morales's hardship case by qualifying her mother. However, the BIA dismissed as "speculation" the possibility that Morales's mother could have adjusted her status to that of a lawful permanent resident. In fact, Morales's mother has successfully adjusted her status with the aid of newly retained counsel.

**[8]** On appeal, Morales need only show "*plausible* grounds for relief." *Lin*, 377 F.3d at 1027. With her mother established as a qualifying relative, it is certainly plausible that Morales

would have met the hardship requirement because Morales's mother, who lives with her, is permanently disabled. *See* 8 C.F.R. § 1240.58(b) (listing the health condition of a parent as ground for hardship); *Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 857-58 (9th Cir. 2004) (per curiam). The facts surrounding Morales's permanently disabled mother, her young daughter's medical problems, the impact of removal on her United States citizen children, and Morales's residence in the United States since her early childhood days might all have been favorably developed by a competent lawyer who was thoroughly familiar with the details of her case. Of course, "our role is not to second guess the hardship decision or even to speculate how it might ultimately come out with a [competent] lawyer marshaling the facts in concert with the law." *See Baltazar-Alcazar v. INS*, 386 F.3d 940, 949 (9th Cir. 2004). Rather, we simply conclude that Morales's ability to present her case may have been affected by the deficient performance of Valinoti and, as a result, we grant Morales another opportunity to present her case before the IJ. In so holding, we dismiss as moot Morales's appeal of the BIA's denial of her motion to reconsider.

Accordingly, we GRANT the petition for review in No. 04-73484 and REMAND. We DISMISS the petition for review in No. 04-75248.