FILED

**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HECTOR SALVADOR MENDEZ-VARGAS,<br><br>Petitioner,<br><br>v.<br><br>ERIC H. HOLDER, Jr., Attorney General,<br><br>Respondent. | No. 07-71020<br><br>Agency No. A079-777-969<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 10, 2011[**]
Pasadena, California

Before: B. FLETCHER, REINHARDT, and WARDLAW, Circuit Judges.

Hector Salvador Mendez-Vargas petitions for review of the Board of

Immigration Appeals's (BIA) denial of his motion to reopen as untimely and for

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]     The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

failure to establish prejudice arising from the alleged ineffective assistance of his original lawyer, Thomas Mix.  We grant the petition for review.

Mendez-Vargas entered the United States without inspection in February 1990.  In September 1999, his partner (now wife), Isabel Mejia, gave birth to a daughter, Miriam, a U.S. citizen who has been diagnosed with Down's Syndrome. In December 2001, Mendez-Vargas appeared before the IJ to seek non-legal permanent resident cancellation of removal on the ground "that removal would result in exceptional and extremely unusual hardship to the alien's . . . child[] who is a citizen of the United States."  8 U.S.C. § 1229b(b)(1)(D).  Mendez-Vargas was represented by Mix, to whom he had paid $5,200 to assist him.[1]

A merits hearing was held in May 2002; however, on account of Mix's failure to inform Mendez-Vargas as to the purpose of the hearing, Mendez-Vargas did not realize he would be deported unless he proved that it would result in "exceptional and extremely unusual hardship" to his daughter.  Mendez-Vargas testified that medical care for his daughter's condition in Mexico was expensive and scarce:  the closest medical facility to his extended family's residence was a

---

[1]  At this time, Mendez-Vargas was earning $8 an hour and Ms. Mejia was unemployed.  Mix required $2,500 to be paid up front and that Mendez-Vargas make monthly payments of $200 toward the remaining balance.  Mendez-Vargas timely and diligently made these payments.

45-minute journey. Mix did not call any other witnesses, nor did he submit any relevant documentation regarding potential hardship to Miriam into the record.

The IJ denied Mendez-Vargas cancellation of removal. While acknowledging that Miriam's condition "is not ordinary" and that the application was therefore "exceptional," the IJ identified a number of deficiencies in Mendez-Vargas's case. These included: (1) a lack of evidence regarding the kinds of medical and social services that would be available to Miriam in Mexico; (2) a lack of evidence regarding whether the Mexican government provided assistance to citizens who could not afford medical treatment; (3) a lack of evidence regarding the costs of medical treatment and other services for Miriam in Mexico, and Mendez-Vargas's ability to afford such services; and (4) a lack of evidence regarding the hardship the family would suffer if Mendez-Vargas were deported to Mexico, particularly in light of the fact that Ms. Mejia was not a Mexican national but rather a citizen of El Salvador. The BIA affirmed the IJ's decision, and granted Mendez-Vargas a period of voluntary departure.

Mix then charged Mendez-Vargas an additional $5,200 to file a meritless petition for review.[2] The government moved to dismiss the petition; Mix failed to file a response. A panel of our court admonished Mix and directed the parties to brief whether or not the IJ should have raised ineffective assistance of counsel *sua sponte*. Mix did not inform Mendez-Vargas of any of these developments.

The case was subsequently placed in mediation. In January 2005, government counsel sent Mix an email indicating a willingness to "consider jointly moving the Board for reopening" if Mix could show "what information you would present in a motion to reopen and if that information would appear to influence the issue of hardship." This offer was significant, particularly because a joint motion to reopen would have provided an exception to the otherwise applicable ninety-day time bar on any unilateral motion to reopen Mendez-Vargas attempted to file himself. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(3)(iii). Mix never provided the government with any written response to this overture; nor did he inform Mendez-Vargas of the government's offer or its significance. Mediation failed, and the petition for review was dismissed for lack of jurisdiction. In one

---

[2] Under the clearly established law of federal appellate courts at that time, this court lacked jurisdiction to consider Mendez-Vargas's challenge to the IJ's determination that he had failed to establish exceptional and extremely unusual hardship to his U.S. citizen daughter. *See Romero-Torres v. Ashcroft*, 327 F.3d 887, 892 (9th Cir. 2003).

final act of malfeasance, Mix sent Mendez-Vargas a letter stating that the petition for review had been denied and misadvising his client as to the date on which the voluntary departure period would expire.

Mendez-Vargas began preparing for his departure from the United States: he terminated his telephone service, informed his landlord that his family was moving, and notified Miriam's school. Believing that he had until February 13, 2006 to depart, Mendez-Vargas consulted with his current attorney, Maria Andrade, for the first time on February 10. In actuality, he should have left no later than February 8. Andrade advised Mendez-Vargas that there was a process whereby he could try to reopen his case, but that to exercise this option, he had to remain in the United States.[3]

Mendez-Vargas subsequently hired Andrade and requested his file from Mix. The complete file was received on July 8, 2006. Andrade filed a complaint against Mix with the State Bar of California on August 1, 2006. She then approached Immigration and Customs Enforcement Deputy Chief Counsel Al Rabinowitz to inquire about his willingness to consider a joint motion to reopen.

---

[3] This advice was correct given the law of the circuit at the time Mendez-Vargas first met with Andrade. Later, in *Lin v. Gonzales*, 473 F.3d 979, 982 (9th Cir. 2007), we held that the applicable regulation, 8 C.F.R. § 1003.23(b)(1), does not bar an alien from filing a motion to reopen after a removal order has been executed.

Rabinowitz agreed to consider the request; Andrade gathered a multitude of additional evidence to support Mendez-Vargas's case and filed a heavily documented written request on October 6. Rabinowitz denied the request on October 27. Andrade filed a motion to reopen with the BIA less than one month later, on November 22, 2006.

The BIA denied the motion to reopen on March 13, 2007, concluding Mix had not rendered ineffective assistance of counsel and that Mendez-Vargas's motion to reopen "does not establish substantial prejudice which affected the outcome of the immigration proceedings."[4] The BIA further concluded that, regardless of the merits of the motion to reopen, the motion was untimely and Mendez-Vargas was not entitled to equitable tolling. *See* 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2. Andrade timely filed the instant petition for review on Mendez-Vargas's behalf.[5]

We review the denial of a motion to reopen for abuse of discretion. *See Socop-Gonzalez v. INS*, 272 F.3d 1176, 1187 (9th Cir. 2001) (en banc). The BIA

---

[4] The BIA agreed, however, that the motion to reopen indicated compliance with the procedural requirements to establish an ineffective assistance of counsel claim. *See Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988).

[5] On April 14, 2007, Mix was ordered inactive by the State Bar of California. He has not been licensed by the State of California to practice law since.

abuses its discretion when its decision is "arbitrary, irrational or contrary to law." *Ontiveros-Lopez v. INS*, 213 F.3d 1121, 1124 (9th Cir. 2000) (citation omitted). We and the BIA are under an affirmative obligation to "accept as true the facts stated in [the petitioner's] affidavit in ruling upon his motion to reopen unless [we find] those facts to be inherently unbelievable." *Ghahremani v. Gonzales*, 498 F.3d 993, 999 (9th Cir. 2007) (citation omitted).

**1.** The BIA abused its discretion in concluding that Mendez-Vargas was not entitled to equitable tolling of the ninety-day deadline for filing a motion to reopen. Mendez-Vargas had no idea that Mix had misadvised him or inadequately represented him until February 10, 2006, when he first met with Andrade. He averred that it was not until Andrade was able to review his entire file that he learned of the government's offer of a joint motion to reopen. Moreover, the complaint against Mix was not filed with the State Bar of California (in an effort to satisfy *Lozada*) until August 1, 2006. Under our precedent, the entire period from the Board's affirmance of the IJ's opinion in October 2003 through August 1, 2006 must be equitably tolled. *See, e.g.*, *Valeriano v. Gonzales*, 474 F.3d 669, 672 n.3 (9th Cir. 2007); *id.* at 673 (not including "[a] month or so of . . . time [that] was necessarily consumed by *Lozada* compliance" in evaluating how much equitable tolling petitioner required).

In addition, the period between August 1 and October 27 — when Rabinowitz denied Andrade's request for a joint motion to reopen — should be equitably tolled.

In *Valeriano*, we observed that, where the government has signaled a willingness to consider a joint motion to reopen, a petitioner's decision to wait for the government's determination on a request for a joint motion may be entitled to equitable tolling. *See* 474 F.3d at 671–74. Here, Mendez-Vargas had a specific and legitimate reason for thinking that a joint motion to reopen was a real possibility, as the government had offered previously to consider filing such a motion during mediation with Mix. Moreover, Rabinowitz invited Andrade to file a request for a joint motion, which she promptly did. Accordingly, equitable tolling of the period through October 27, 2006 is warranted. Since the period between October 27 and November 22, 2006 — the date on which Andrade filed a unilateral motion to reopen with the BIA — is less than ninety days, the BIA erred in concluding that the motion to reopen was untimely.

**2.** The BIA also applied an incorrect legal standard in concluding that Mendez-Vargas did not suffer prejudice as a result of Mix's ineffective assistance. To prevail on an ineffective assistance of counsel claim, an immigrant must show that (1) counsel's performance was so deficient as to render the hearing

fundamentally unfair; and (2) counsel's performance prejudiced him. *See Mohammed v. Gonzales*, 400 F.3d 785, 793 (9th Cir. 2005). The immigrant "need not show that the counsel's ineffectiveness definitively changed the outcome. Rather, prejudice results when 'the performance of counsel was so inadequate that it *may* have affected the outcome of the proceedings.'" *Id.* at 793–94. (citation omitted). Put differently, an immigrant need only "show that he has *plausible* grounds for relief." *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004).

Mix failed to develop or introduce at least six forms of evidence related to the hardship inquiry. He presented no evidence of: (1) the implications of Miriam's diagnosis or its prognosis as she matured; (2) existing medical services for children with Down's Syndrome within a reasonable distance of Mendez-Vargas's family's residence in Oaxaca, Mexico; (3) the cost of medical services for Miriam in Mexico; (4) psychological or emotional hardship to Miriam if her family was forced to relocate or split up (if Ms. Mejia could not obtain authorization to live and work in Mexico with her husband); (5) whether Ms. Mejia could, in fact, legally reside in Mexico; and (6) whether Mendez-Vargas's family could provide any financial assistance to him or his family if he was deported. Mix's incompetence continued after the IJ's decision was rendered, and included a legally futile petition for review to this court which Mix did not even properly prosecute.

The BIA also erroneously concluded that Mendez-Vargas suffered no prejudice on account of Mix's representation, stating that the evidence submitted by Andrade "would not support a remand." The BIA focused solely on evidence indicating "there is medical treatment available in Mexico for children with Down['s] Syndrome, albeit not in the area to which the respondent plans to return." The BIA completely ignored the rest of the evidence submitted with the motion to reopen, which, notwithstanding the availability of medical treatment *somewhere* in Mexico, "*may* have affected the outcome of the proceedings." *Mohammed*, 400 F.3d at 794.

3.    Because Mendez-Vargas has demonstrated that he is entitled to equitable tolling; that he was prevented from reasonably presenting his case by the ineffective assistance of his former counsel; and that he was prejudiced by that ineffectiveness, we grant the petition. We remand with instructions to the BIA to reopen the case and remand to the IJ for further proceedings consistent with this order.

We retain jurisdiction over subsequent appeals in this matter.

**PETITION GRANTED; REMANDED.**